## NEW ORLEANS GAS LIGHT COMPANY *v.* DRAINAGE COMMISSION OF NEW ORLEANS.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 172.   Argued March 8, 9, 1905.—Decided April 3, 1905.

The drainage of a city in the interest in the public health and welfare is one of the most important purposes for which the police power can be exercised.

Every reason of public policy requires that grants in the sub-surface of streets shall be held subject to such reasonable regulation as the public health and safety may require.

Uncompensated obedience to a regulation enacted for the public safety under the police power of the State is not a taking of property without due compensation.

Under the facts of this case, the changing of the location of gas pipes at the expense of the Gas Company to accommodate a system of drainage, which has been upheld by the state court as an execution of the police power of the State, does not amount to a deprivation of property without due process of law.

THE New Orleans Gas Light and Banking Company was incorporated in 1835, and was given the exclusive privilege of vending gas in the city of New Orleans and its faubourgs, and the city of La Fayette, to such persons or bodies corporate as might voluntarily choose to contract for the same, and it

was permitted to lay pipes and conduits at its own expense in the public ways and streets of New Orleans, having due regard for the public convenience. In 1845 and 1854 the charter of the company as to its right to engage in banking was withdrawn, and the right to vend gas and use the streets was continued to the corporation under the name of the New Orleans Gas Light Company until April 1, 1875, when its corporate privileges should end, the company during the continuance of its charter to furnish the Charity Hospital with necessary gas and fixtures free of charge. By amendments the contract privilege of the company was extended until April 1, 1895, the exclusive privileges granted by the original charter not to extend beyond the time fixed in the act of incorporation. In 1870 another company, under the name of the Crescent City Gas Light Company, was incorporated, its charter providing that the company, its successors and assigns, should for fifty years from the expiration of the charter of the New Orleans Gas Light Company have the sole and exclusive privilege of making and supplying gas light in the city of New Orleans, and for that purpose be allowed to lay pipes and conduits in the streets and alleys of the city where the same may be required, at its own expense, in such manner as to least inconvenience the city and its inhabitants, and the company was also required to afterwards repair with the least possible delay the streets it had broken. In 1873 an act of the legislature fixed the date of the expiration of the exclusive franchise of the New Orleans Gas Light Company at April, 1875, and the franchise of the Crescent City Gas Light Company was confirmed from that date for the period of fifty years. On March 29, 1875, the New Orleans Gas Light Company and the Crescent City Gas Light Company were consolidated under the name of the former corporation. This company is the plaintiff in the action in the state court. By an act of the legislature, approved July 9, 1896, the State created a board known as the Drainage Commission of New Orleans, which board was given the power to control and execute a plan for the drainage of the

city of New Orleans, and also the power to appropriate property according to the laws of the State, by legal proceedings, for the purpose of constructing a drainage system. After adopting a system of drainage, and proceeding with the construction thereof, according to the plans, it was found necessary to change the location in some places in the streets of the city of the mains and pipes theretofore laid by the New Orleans Gas Light Company. The testimony shows that there was nothing to indicate that these changes were made in other than cases of necessity and with as little interference as possible with the property of the gas company. By stipulation between the parties it was agreed that the charges should be paid by the gas company when it became necessary to accede to the demands of the Drainage Commission; the gas company should keep an account thereof, and that its right to recover for the amount expended by it should not be prejudiced by the arrangement made, but should be submitted to the courts for final adjudication. This action was brought to recover the cost of the changes so made. In the court of original jurisdiction there was a judgment in favor of the Drainage Commission. Upon appeal the Supreme Court of Louisiana reversed this judgment. Upon rehearing the latter judgment was reversed and a final decree rendered, affirming the judgment of the lower court, rejecting the claim of the gas company. 111 Louisiana, 838. A writ of error to this court brings into review that judgment, the contention being that the judgment of the state court has impaired the contract rights of the gas company and has the effect to take its property without compensation, in derogation of rights secured by the Constitution and the Fourteenth Amendment.

*Mr. Charles F. Buck* for plaintiff in error:

The charter of the Gas Light Company is a contract. *Gaslight Co.* v. *Light & Heat Co.*, 115 U. S. 650. The franchise includes the right to lay mains as well as to sell and deliver gas, and the Gas Light Company has special rights in the

streets of which it cannot be deprived. *New Orleans* v. *Clark*, 95 U. S. 644; *Moore* v. *Waterworks Co.*, 114 Fed. Rep. 382, distinguishing *Waterworks Co.* v. *City of Kansas*, 28 Fed. Rep. 921. This is a taking of property for a public use and not a regulation. *Chicago* v. *Taylor*, 125 U. S. 161; *Road Co.* v. *Tulmuck County*, 31 Oregon, 1; *Railroad Co.* v. *Southern Tel. Co.*, 46 Georgia, 43; *Railroad Co.* v. *Commissioners*, 127 Massachusetts, 50; *San Mateo County* v. *So. Pacific Co.*, 13 Fed. Rep. 733; *Electric Light Co.* v. *Marble City Co.*, 85 Vermont, 377; *Hudson Tel. Co.* v. *Jersey City*, 49 N. J. L. 303; *Trust Co.* v. *Railway Co.*, 53 Fed. Rep. 687; *Electric Light Co.* v. *Clarksburg*, 50 L. R. A. 142, 151; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S. 683; *Chicago Gas Co.* v. *Lake*, 130 Illinois, 42; *Indianapolis* v. *Gas Company*, 140 Indiana, 114; *Re Sixth Ave. R. R. Co.*, 72 N. Y. 330; 2 Dillon Mun. Corp., 3d ed., § 588; *Irwin* v. *Telegraph Co.*, 37 La. Ann. 63; *Glover* v. *Powell*, 10 N. J. Eq. 211.

The police power whatever it may be is subordinate to the Constitution. *Matter of Jacobs*, 95 N. Y. 98; *Mugler* v. *Kansas City*, 123 U. S. 623, does not apply. As to conflict between the police power and the Constitution, see Mills on Eminent Domain, §§ 7, 44; Elliot on Roads and Streets, § 20, p. 897; Cooley Const. Lim., 3d ed., 544, 572; Russel on the Police Power, 25, 86; Lewis on Eminent Domain, §§ 35, 56, 153, 602; Freund on Police Power, §§ 513, 555, 577; *Detroit* v. *Citizens' Street Ry. Co.*, 184 U. S. 868; *Railroad Tax Cases*, 13 Fed. Rep. 755; *Binghampton Bridge Case*, 3 Wall. 51; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116. The right to compensation for property taken for public use, is not to be denied on the ground that the expropriation is the exercise of the police power. *Railway Co.* v. *Railroad Co.*, 51 La. Ann. 814; *Railroad Co.* v. *Levee Board*, 49 La. Ann. 570; *Western Union Tel. Co.* v. *Myatt*, 98 Fed. Rep. 335.

The enforced removal and relaying of plaintiff's mains is a taking of its private property and impairs its contract with the city. 1 Blackstone, 139; Freund, 545; Elliot, § 202;

*Eaton* v. *Railroad Co.,* 51 N. H. 504; *Tumpelly* v. *Green Bay Co.,* 13 Wall. 166, 181; *Cotting* v. *Kansas City,* 183 U. S. 105; *United States* v. *Lynah,* 188 U. S. 469; *Barbier* v. *Connolly,* 113 U. S. 27.

*Mr. Omer Villeré* for defendant in error:

This case comes under the same rule that expenses of erecting gates, planking and crossing, and maintaining flagmen, necessarily resulting from the laying out of a street across a railroad, are incidental to the exercise of the police powers of the State, and do not constitute an element of the just compensation to the railroad. *Chicago R. R.* v. *Chicago,* 166 U. S. 226. And see as to police power, *Mugler* v. *Kansas City,* 123 U. S. 623; *Chicago* v. *Quincy,* 27 N. E. Rep. 193; *Water Works Co.* v. *City of Kansas,* 28 Fed. Rep. 921; *Railroad Co.* v. *Wakefield,* 103 Massachusetts, 261; *Jamaica Bond Co.* v. *Brookline,* 121 Massachusetts, 5; *Gas Co.* v. *Columbus,* 19 L. R. A. 510; *Cleveland* v. *Augusta,* 102 Georgia, 233; *Clapp* v. *Spokane,* 53 Fed. Rep. 516; *State* v. *Flower,* 49 La. Ann. 1199; *Cincinnati* v. *Penny,* 21 Ohio St. 499; and other cases in the opinion of the state court.

It is certainly for the common welfare of the people of New Orleans that the State of Louisiana has created the Drainage Commission and charged it with the control and execution of the drainage of New Orleans, and given it the right in all streets of said city for any of its works. And whenever the pipes and conduits of the New Orleans Gas Light Company are in the way of the proper execution of the drainage plans, it is but just and proper that said company should readjust its pipes and conduits to permit of the execution of a great work of public utility.

The State gave the company the right to lay its pipes and conduits in the streets, but never abandoned its superior right of control over and in and under said streets.

Unless the Gas Light Company can show that it has a right under the street, superior to the rights of railroads on the

street, it is not entitled to any compensation that railroads would not be entitled to.

The Supreme Court of Louisiana has decided, in the interpretation of its constitution and of its statutes, that the requirement of the Drainage Commission that the Gas Light Company shift its mains to meet the exigencies of a public work, did not constitute a taking or damaging of property in violation of the articles of its constitution, and that decision is not subject to review by this court in the absence of a specific point raised in the case that such a requirement violates the provisions of the Fourteenth Amendment.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

In the case of the *New Orleans Gas Company* v. *Louisiana Light Company*, 115 U. S. 650, it was held that the complainant, by reason of the franchises granted and agreements made, as fully set forth in that case, had acquired the exclusive right to supply gas to the city of New Orleans and its inhabitants through pipes and mains laid in the streets.

It is the contention of the plaintiff in error that, having acquired the franchise and availed itself of the right to locate its pipes under the streets of the city, it has thereby acquired a property right which cannot be taken from it by a shifting of some of its mains and pipes from their location to accommodate the drainage system, without compensation for the cost of such changes. It is not contended that the gas company has acquired such a property right as will prevent the Drainage Commission, in the exercise of the police power granted to it by the State, from removing the pipes so as to make room for its work, but it is insisted that this can only be done upon terms of compensation for the cost of removal. This contention requires an examination of the extent and nature of the rights conferred in the grant to the gas company. The exclusive privilege which was sustained by this court in the case

of the *New Orleans Gas Co.* v. *Louisiana Light Co., supra,* was the right to supply the city and its inhabitants with gas for the term granted.  There was nothing in the grant of the privilege which gave the company the right to any particular location in the streets; it had the right to use the streets, or such of them as it might require in the prosecution of its business, but in the original grant to the New Orleans Gas Light and Banking Company the pipes were to be laid in the public ways and streets, "having due regard to the public convenience."  And in the grant to the Crescent City Gas Light Company the pipes were to be "laid in such manner as to produce the least inconvenience to the city or its inhabitants."  In the very terms of the grant there is a recognition that the use of the streets by the gas company was to be in such manner as to least inconvenience the city in such use thereof.  Except that the privilege was conferred to use the streets in laying the pipes in some places thereunder, there was nothing in the terms of the grant to indicate the intention of the State to give up its control of the public streets, certainly not so far as such power might be required by proper regulations to control their use for legitimate purposes connected with the public health and safety.  In the case above cited, in which the exclusive right to supply gas was sustained, there was a distinct recognition that the privilege granted was subject to proper regulations in the interest of the public health, morals and safety.  Upon this subject Mr. Justice Harlan, speaking for the court, said (115 U. S. 671):

"With reference to the contract in this case, it may be said that it is not, in any legal sense, to the prejudice of the public health or the public safety.  It is none the less a contract because the manufacture and distribution of gas, when not subjected to proper supervision, may possibly work injury to the public; for the grant of exclusive privileges to the plaintiff does not restrict the power of the State, or of the municipal government of New Orleans acting under authority for that purpose, to establish and enforce regulations which are not

inconsistent with the essential rights granted by plaintiff's charter, which may be necessary for the protection of the public against injury whether arising from the want of due care in the conduct of its business, or from any improper use of the streets in laying gas pipes, or from the failure of the grantee to furnish gas of the required quality and amount. The constitutional prohibition upon state laws impairing the obligation of contracts does not restrict the power of the State to protect the public health, the public morals, or the public safety, as the one or the other may be involved in the execution of such contracts. Rights and privileges arising from contracts with a State are subject to regulations for the protection of the public health, the public morals, and the public safety, in the same sense, and to the same extent, as are all contracts and all property, whether owned by natural persons or corporations."

The drainage of a city in the interest of the public health and welfare is one of the most important purposes for which the police power can be exercised. The Drainage Commission, in carrying out this important work, it has been held by the Supreme Court of the State, is engaged in the execution of the police power of the State. *State* v. *Flower,* 49 La. Ann. 1199, 1203.

It is admitted that in the exercise of this power there has been no more interference with the property of the gas company than has been necessary to the carrying out of the drainage plan. There is no showing that the value of the property of the gas company has been depreciated nor that it has suffered any deprivation further than the expense which was rendered necessary by the changing of the location of the pipes to accommodate the work of the Drainage Commission. The police power, in so far as its exercise is essential to the health of the community, it has been held cannot be contracted away. *N. Y. & N. E. Railroad Co.* v. *Bristol,* 151 U. S. 556, 567; *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S. 746, 751; *Stone* v. *Mississippi,* 101 U. S. 814, 816. In a large city

like New Orleans, situated as it is, and the entrepôt of an extensive commerce coming from many foreign countries, it is of the highest importance that the public health shall be safeguarded by all proper means.   It would be unreasonable to suppose that in the grant to the gas company of the right to use the streets in the laying of its pipes it was ever intended to surrender or impair the public right to discharge the duty of conserving the public health.   The gas company did not acquire any specific location in the streets; it was content with the general right to use them, and when it located its pipes it was at the risk that they might be, at some future time, disturbed, when the State might require for a necessary public use that changes in location be made.

This right of control seems to be conceded by the learned counsel for the plaintiff in error, in so far as it relates to the right to regulate the use of the surface of the streets, and it is recognized that the users of such surface may be required to adapt themselves to regulations made in the exercise of the police power.   We see no reason why the same principle should not apply to the sub-surface of the streets, which, no less than the surface, is primarily under public control.   The need of occupation of the soil beneath the streets in cities is constantly increasing, for the supply of water and light and the construction of systems of sewerage and drainage, and every reason of public policy requires that grants of rights in such sub-surface shall be held subject to such reasonable regulation as the public health and safety may require.   There is nothing in the grant to the gas company, even if it could legally be done, undertaking to limit the right of the State to establish a system of drainage in the streets.   We think whatever right the gas company acquired was subject in so far as the location of its pipes was concerned, to such future regulations as might be required in the interest of the public health and welfare. These views are amply sustained by the authorities.   *National Water Works Co.* v. *City of Kansas,* 28 Fed. Rep. 921, in which the opinion was delivered by Mr. Justice Brewer,

then Circuit Judge; *Gas Light & Coke Co.* v. *Columbus,* 50 Ohio St. 65; *Jamaica Pond Aqueduct Co.* v. *Brookline,* 121 Massachusetts, 5; *In re Deering,* 93 N. Y. 361; *Chicago, Burlington &c. R. R. Co.* v. *Chicago,* 166 U. S. 226, 254. In the latter case it was held that uncompensated obedience to a regulation enacted for the public safety under the police power of the State was not taking property without due compensation. In our view, that is all there is to this case. The gas company, by its grant from the city, acquired no exclusive right to the location of its pipes in the streets, as chosen by it, under a general grant of authority to use the streets. The city made no contract that the gas company should not be disturbed in the location chosen. In the exercise of the police power of the State, for a purpose highly necessary in the promotion of the public health, it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public work. In complying with this requirement at its own expense none of the property of the gas company has been taken, and the injury sustained is *damnum absque injuria.*

We find no error in the judgment of the Supreme Court of Louisiana and the same is

*Affirmed.*