CHICAGO & NORTH WESTERN RAILWAY COMPANY, Appellant, v. DRAINAGE DISTRICT NUMBER FIVE, SAC COUNTY, Appellees.

**Drainage:** CONSTRUCTION OF DRAINS ACROSS RIGHT OF WAY: DAMAGES:
1 STATUTES. The term "improvement" as used in section 19, chapter 68, laws 30th General Assembly, relative to the construction of drains across the right of way of a railway company, has reference to the proposed ditch, drain or change of a natural water course, and it is not contemplated by the statute that the cost of constructing a new bridge necessitated by the improvement should be an element of damages recoverable by the railway company.

**Same.** There is an easement in every natural water course for the
2 benefit of all land naturally draining into the same, which is paramount to the rights of a railway company in crossing the water course; and a railway company is bound to anticipate the future needs of drainage along such a water course although increased by artificial means.

**Same:** MEASURE OF DAMAGES. Where the public need requires enlarged drainage facilities in a natural water course, and the construction of the improvement necessitates the building of a new railroad bridge, the cost of constructing the bridge is not the measure of the company's damage arising from the improvement.

Deemer, J., dissenting.

*Appeal from Sac District Court.*—HON. Z. A. CHURCH, Judge.

FRIDAY, MAY 14, 1909.

THIS case arises out of a drainage proceeding relating to the establishment of drainage district No. 5. The plaintiff presented its claim for damages for $3,920. The commissioners appointed to appraise damages allowed the sum of $160, and no more. The board of supervisors approved such allowance. An appeal was taken to the district court, and the cause there tried to the court without a jury, and upon a written stipulation as to the facts. The district court affirmed the action of the board of supervisors, and allowed the plaintiff the same amount. From this judgment the plaintiff appeals.—*Affirmed.*

*James C. Davis, A. A. McLaughlin,* and *George C. Hise,* for appellant.

*A. B. Barclay* and *R. L. McCord, Jr.,* for appellees.

EVANS, C. J.—The proposed drain crosses the right of way of the plaintiff company along a natural water course, over which the plaintiff company for many years has maintained a bridge.

In the presentation of its claim the plaintiff attached the following itemized statement as the basis thereof:

Estimated Damages of Crossing of Proposed Drainage Ditch Petitioned for by Alex. Wager et al., at Bridge 1,451, Three Miles West of Sac City, Iowa. Replacement of 48-foot P. B. with 28 foot 6 inch I Beam Span on Masonry Abutments.

Estimate No. 521—Drawing No. 4,628.

| | | | |
|---|---|---|---|
| 175 cu. yds. wet excavation between piles at........ | $ 1 25 | $218 00 | |
| 1,890 sq. ft. sheet piling driven and pulled...... | 125 | 236 00 | |
| 70 piles in place......... | 7 00 | 490 00 | |
| 74 cu. yds. concrete...... | 6 00 | 444 00 | |
| 86 cu. yds. masonry....... | 10 00 | 860 00 | $2,248 00 |
| Steel — One 28-foot beam span 21,600 pounds..... | 04 | 864 00 | |
| Erection .............. | | 75 00 | |
| Deck 28 feet............ | 3 50 | 88 00 | |
| Falsework redriving 2 bents | 25 00 | 50 00 | |
| Plainting 10 tons......... | 1 50 | 15 00 | 1,092 00 |
| Engineering and Supt. 2% of $3,340 ............ | | | 65 00 |
| Freight on material...... | | | 480 00 |
| Excavation for ditch 320 cu. yds. ............... | 50 | | 160 00 |
| | | | |
| Total estimated cost... | | | $4,045 00 |
| Equated sum for annual maintenance on basis of 4% interest as follows: | | | |
| Annual cost of painting... | $10 00 | | |
| Annual cost of relining.... | 10 00 | | |
| Annual cost of redecking... | 13 00 | $ 33 00 | |
| Annual cost of maintaining pile bridge ........... | | 38 00 | |
| Annual credit $38-$33-$5.00 | | | |
| Credit by same yielding 5% annual (a) 4%........ | | | $ 125 00 |
| | | | |
| | | | $3,920 00 |

In the stipulation of facts entered into between the parties, it is agreed that $160 is the reasonable cost of ex-

cavating the ditch across the plaintiff's right of way. It is also agreed, in substance, that the other items of cost as set forth in plaintiff's specifications are the reasonable cost of the various matters specified therein; the defendant contending, however, that they are not a proper element of damage.

The fifth paragraph of the stipulation is as follows:

(5) The only question presented for the consideration of the court at this time is the question of whether the said railway company is entitled, under the present drainage laws, which were in force on February 5, 1907, at time board made its finding and order from which appeal in this case is taken, to damages in any amount for and on account of being obliged to abandon its present wooden bridge at said point, and being compelled to substitute a more expensive steel structure; and, if the court shall find that said railway company is entitled to damages for such substituted structure, then said court shall enter an order finding in favor of said plaintiff and appellant, Chicago & Northwestern Railway Company, in the sum of $3,760 in addition to the said $160 above mentioned.

(6) Either party shall have an exception to said finding, judgment, or order, and have the right to appeal if it so desires.

It is stated in appellant's argument, though it does not appear specifically in the stipulation of facts, that the railroad company has maintained, for many years, across this water course a forty-eight-foot wooden bridge supported by rows of piling fourteen feet apart. The proposed ditch will be twenty feet wide at the top, and seven feet deep, and six feet wide at the bottom where the same crosses the right of way. The case was tried and submitted in the court below on March 21, 1907, and taken under advisement by the court to be decided in vacation. The finding and judgment of the court was made on the 12th of April following. In the meantime, on April 2, 1907, chapter 95, of the Laws of the Thirty-Second General Assembly went into effect.

The argument of appellant is first directed to the proposition that it is entitled to have the case decided upon the law in force at the time the case was submitted, and that under such law, namely, chapter 68, 30th General Assembly, it was entitled to recover as damages the cost of constructing a new bridge.  The contention of the defendants is that chapter 68, 30th General Assembly, created no right in the plaintiff to recover as damages the cost of constructing a new bridge.  If that be not so, they contend that under the later statute, which went into effect while this case was still pending in the district court, such right was expressly negatived.  Such enactment was made retroactive by its express provisions.  Whether a case may be ruled by one statute at the time of its trial and submission to the district court, and then be ruled by another statute before judgment; whether the plaintiff may be entitled to judgment in the first instance, and the defendant become entitled to it in the second, is a question which we will not now decide.  If the plaintiff had a legal claim when it was submitted to the court, and lost its right by a mere change in the statute while the court was thinking about it, it presents a situation, to say the least, repugnant to the judicial mind, if not abhorrent to the moral sense. We have therefore given our first consideration to plaintiff's case as made under the law in force at the time of the submission to the district court.   Our conclusions thereon render it unnecessary to consider the other question.

In its argument, the plaintiff bases its right of recovery upon the language of section 19, chapter 68, 30th General Assembly, which is as follows:

Whenever the board of supervisors shall have established any levee or drainage district or change of any natural water course and the *levee, ditch, drain,* or, water course crosses the right of way of any railroad company, and the place where and the manner and method of cross-

ing such right of way shall have been determined as provided in the preceding section, such railroad company shall within thirty days after being notified by the county auditor to construct the same and the time within which the work must be completed, proceed to *construct such levee, ditch, drain* or change of natural water course in accordance with the plans and specifications as shown by the plat and profile of the engineer. If such railroad company shall fail, neglect or refuse to do so within the time fixed in such notice, the auditor shall cause the work to be done under the supervision of the engineer in charge of *the improvement* and the railroad company shall be liable for the cost thereof, to be collected by the county in any court having jurisdiction. All other proceedings in relation to railroads shall be the same as provided for individual property owners within the district, except that the cost of *constructing the improvement* across its right of way shall be considered as an element of its damages by the appraisers thereof; and the commissioners to assess benefits shall fix and determine the actual benefits to the property of the railroad company within the levee or drainage district and make return thereof with their regular return. Such special assessment shall be a debt due personally from the railroad company, and unless the same is paid by the railroad company as a special assessment, it may be collected in the name of the county in any court having jurisdiction.

I. The particular phrase relied upon is "that the cost of constructing the improvement across its right of way shall be considered as an element of its damages." It will

1. DRAINAGE: construction of drain across right of way: damages: statutes.

be noted that this phrase does not, in terms, include the cost of building a new bridge; but plaintiff contends, in effect, that such is the meaning of the words "the improvement," and that it should be so construed. In the copy of the statute which we have set out above, we have italicized certain words thereof for convenience of reference. It will be observed that the words "the improvement" appear in the preceding sentence of this sec-

tion.   By reference, also, to the first eighteen sections of the chapter it will be noted that this expression appears upwards of twenty times.   There can be no doubt that the expression "the improvement," as it occurs in the first eighteen sections of the chapter, refers always to the proposed "levee, ditch, drain," etc.   It is manifest, also, that the expression as it appears first in section nineteen refers to the same thing.   We can see no ground for holding that it takes on any different meaning in the sentence from which we have already quoted, and upon which plaintiff bases its right.   Recognizing the seriousness of interfering temporarily with a railroad company's possession and control of its right of way, this section requires the railway company to construct the proposed "improvement" across its right of way, and do so in the first instance at its own cost.   This cost, however, is compensated for by making the same an element of damages.   This is manifestly the sole purpose and intent of this provision of the statute upon which plaintiff relies as a basis for recovering the cost of constructing a new bridge.   We are forced, therefore, to the conclusion that this section of the statute does not provide for the cost of constructing a new bridge as an element of damages in plaintiff's favor.   If the plaintiff is entitled to recover therefor at all, it must be because of a common-law right existing independent of the statute, and to that question we now turn.

II.   It seems to be well settled by the authorities, and with substantial unanimity, that there is a natural easement, in every natural water course as such, in favor of all lands naturally draining thereinto at any point in its course; that the rights of water-course are forever paramount to the rights of a railway company across the same, and that there is probably no power in the State or its agency to surrender such right; that the right of a railway company to lay its track and its bridges across a water course is subject to the pub-

2. SAME.

lic right of drainage, and the railway company is bound
to foresee the future needs of drainage along such water
course, even though they may be increased by artificial
means; and that it undertakes from the beginning the con-
tinuing duty to adapt itself to, and provide for, such in-
creasing needs as they shall appear. The question under
consideration here has been so fully discussed in very re-
cent years by some of the most eminent courts of our land
that we shall make a brief reference to some of them, and
let it suffice, without further debate on our own part.

The most prominent case is that of *C., B. & Q. Ry.
Co. v. Illinois,* 200 U. S., 561 (26 Sup. Ct. 341, 50 L.
Ed. 596). This was a case which involved the deepening
of Rob Roy creek in Illinois, and for the sake of brevity
we shall refer to it as the *Rob Roy* case. It was first de-
cided by the Supreme Court of Illinois, whose decision
is reported in 212 Ill. 103 (72 N. E. 219). The Rob
Roy creek flowed through the railway company's right of
way. The railway company had maintained thereover a
bridge, for many years, of the value of $8,000. The con-
struction of the improvement made necessary the substi-
tution of a new bridge at a cost of $13,000. The commis-
sioners of the drainage district demanded of the railway
company that it perform the excavation of the new ditch
across its right of way, and remove therefrom all obstruc-
tions placed therein by itself in the form of foundation
and support for its bridge, and that it do so at its own
expense. The company resisted the demand, and claimed
that it was entitled to compensation, both for the proposed
excavation and for the construction of the new bridge.
The decision of the Supreme Court of Illinois was adverse
to the company on both propositions. It based its rulings
expressly upon the common-law duty of the railway com-
pany, and not upon the statute of Illinois; the constitu-
tionality of the statute being challenged. On appeal from
the court to the Supreme Court of the United States the

decree was modified and affirmed. The latter court held that a railway company could not be compelled to ex-cavate the soil at its own expense, but that it could be required to remove from the course of the proposed ditch all obstructions which it itself had placed there, and that it must build, at its own expense, such new bridge as it deemed fit. It was held that the drainage district was un-der no obligation to compensate the railway company for damages by reason of the necessity of a new bridge, aris-ing out of construction of the ditch through its right of way. We make the following brief quotation from the opinion of such court as indicating, in a general way, its holding:

But the railway company, in effect, if not in words, insists that the rights which it asserts in this case are superior and paramount to any that the public has to use the water course in question for the purpose of draining the lands in its vicinity, although such water course was in existence, for the benefit of the public, long before the railway company constructed its bridge. This contention can not, however, be sustained except upon the theory that the acquisition by the railway company of a right of way through the lands in question, and the construction on that right of way of a bridge across Rob Roy creek at the point in question, carried with it a surrender by the State of its power, by appropriate agencies, to provide for such use of that natural water course as might subsequently become necessary or proper for the public interests. If the State could part with such power, held in trust for the public—which is by no means admitted—it has not done so in any statute, either by express words, or by necessary implication. When the railway company laid the founda-tion of its bridge in Rob Roy creek, it did so subject to the rights of the public in the use of that water course; and also subject to the possibility that new circumstances and future public necessities might, in the judgment of the State, reasonably require a material change in the methods used in crossing the creek with cars. It may be—and we take it to be true—that the opening under the

bridge as originally constructed was sufficient to pass all the water then or now flowing through the creek. But the duty of the company, implied in law, was to maintain an opening under ·the bridge that would be adequate and effectual for such an increase in the volume of water as might result from lawful, reasonable regulations, established by appropriate public authority from time to time, for the drainage of lands on either side of the creek. Without further discussion we hold it to be the duty of the railway company, at its own expense, to remove from the creek the present bridge, culvert, timbers and stones placed there by it, and also (unless it abandons or surrenders its right to cross the creek at or in the vicinity of the present crossing) to erect, at its own expense, and maintain, a new bridge.

In its opinion the United States Supreme Court quotes from many authorities. .From the case of *Kankakee Ry. Co. v. Horan,* 131 Ill. 288 (23 N. E. 621), it quotes as follows:

The Parker slough was a water course, and it was the legal right of any one along its line for miles above the railroad, where the water naturally shed toward the slough, to drain into it, and·no one below, owning land along the slough, would have any legal remedy against such person so draining water into the slough above him for any damage done to his inheritance by means of an increased flow of water caused thereby. In other words, the slough was a legal water course for the drainage of all the land the natural tendency of which was to cast its surplus water, caused by the falling of rain and snow, into it, and this whether the flow was increased by artificial means or not. It would seem legitimately to follow that the railroad company, in providing a passageway for the slough, was bound to anticipate and provide for any such legal increase of the water flow. If it did not, it was doing a wrong and legal injury to any one situated like the appellee, who received injury in consequence of a failure on its part to do its duty.

It comments on the foregoing as follows: "Many

cases in other courts are to the same general effect. They negative the suggestion of the railway company that the adequacy of its bridge, and the opening under it for the passing of the water of the creek at the time the bridge was constructed, determines its applications to the public at all subsequent periods." It quotes also from the case of *Lake Erie & W. Ry. v. Smith* (C. C.) 61 Fed. 885: "The duty of a railroad to restore a stream or high-way which is crossed by the line of its road is a continuing duty; and if, by the increase of population, or other causes, the crossing becomes inadequate to meet the new and altered condition of the country, it is the duty of the railroad to make such alterations as will meet the present needs of the public."

From the opinion of the Supreme Court of Illinois, we quote as follows:

Most of the foregoing cases are upon the common-law duty of railroads to keep highways and waterways over which they cross in such condition as will meet all public requirements, and the duty in such cases is treated as a continuing duty. Those cases not based upon the common-law duty are where statutes have been enacted for their regulation under the police power of the State, or where statutes merely declaratory of the common-law duty in such cases have been enacted. If it is the common-law duty of appellant to make the necessary changes in its bridge and opening across the Rob Roy creek as will accommodate the waters which naturally drain through the same, although the flow be increased by artificial means, if the statute in question is but declaratory of the common-law duty, or is the exercise of the police power, then it is clear that there is no such taking of appellant's property as invades the various provisions of the Constitution relied upon in the demurrer. The power exercised would not be that of eminent domain.

A large number of authorities are cited and commented upon in the opinions referred to, and we shall not

repeat the citations here.   Strongly in point is *New Or-leans Gas-light Company v. Drainage Commission,* 197 U. S. 453 (25 Sup. Ct. 471, 49 L. Ed. 831), and *Cooke v. Boston Ry. Co.,* 133 Mass. 185.   The principles announced in these cases are quite conclusive against the plaintiff on any theory of right outside of the statute.

III.   There is a further reason why the plaintiff can not recover as damages the cost of constructing a new bridge in the absence of a statute so providing.   It is not the true measure of damage, under any rule applicable to *ad quod damnum* cases.   In cases involving damages for establishment of highways it was held by this court in an early day that the claimant for damages could not recover as such the cost of constructing a fence, although such fence was rendered necessary by the establishment of the highway. *Hanrahan v. Fox,* 47 Iowa, 102.   The fact that the land was thrown open was a fact which could be considered in estimating the damages, but not the cost of a particular fence.   We suggest this as an analogy only.   In the case at bar it appears that the company has maintained a wooden bridge, including wooden supports, over the water course in question.   Some annual expense must have been incurred in its maintenance.   Its life, at best, could continue for only a few years.   For such wooden bridge it is about to substitute a more permanent structure of steel and masonry, more valuable presumably than the old structure, and more enduring.   When constructed, it is as much the property of the railway company as any part of its roadbed.   Presumably it must add something to the value of such roadbed as an asset, even though it may add less value than the cost of its construction.   To say that it may charge up to the drainage district the full cost of its construction as such, and a further sum to cover its perpetual maintenance, is to render to the railway company something more than compensation for actual dam-

3. SAME:
  measure of
  damages.

age sustained. Under such a ruling the railway company could extend its roadbed over water courses in the first instance by temporary structures, and then call for permanent structures and future maintenance from drainage districts, whenever it should be sought to improve such water courses. If the value of a bridge can be considered as an element of damages at all as such, it would be more reasonable to take account of the value of the old bridge, or possibly the difference in its value immediately before and after constructing the ditch across the right of way. We do not now say that even such would be a proper rule; we only hold now that the cost of a new bridge is not a proper rule for the measure of damage in such a case. Without now holding that there are no other elements of damage to which a railroad company may be entitled except the cost of constructing the improvement across its right of way, we do hold that under the evidence in this case it can recover only the cost of constructing the improvement across its right of way, which is the sum of $160, and which sum was allowed by the district court. There being no other evidence before us, except evidence of the cost of building a new bridge, it follows from what we have already said that the plaintiff is not entitled thereto.

The judgment of the lower court will therefore be *affirmed.*

DEEMER, J., dissenting.—Whilst I am not thoroughly convinced of the incorrectness of the final conclusions of the majority in this case, because of the suggestion that the cost of the bridge is not the real measure of plaintiff's damage, I am constrained to disagree with the real argument of the majority to the effect that the cost of the improvement does not, in some manner, include the cost of at least a part of the expense of rebuilding the bridge at the point where the drainage ditch crosses the right

of way. In other words, I disagree with the construction placed upon sections eighteen and nineteen, chapter 68, Acts 30th General Assembly. I have no doubt that the Legislature by that act intended that the railway should be reimbursed for all the expense it was put to by reason of the construction of the ditch. If that be not true, then there was no necessity whatever for the enactment of chapter 95, Acts 32d General Assembly. I have no doubt in my mind that the Legislature thought, when it passed the original act, that it was required to reimburse a railway company for all expense it was put to by reason of the establishment of the drainage district, and that this involved the cost of a bridge, as well as the removal of the soil for an enlarged channel for the drainage district ditch. This to my mind is easily demonstrable from a comparison of the acts of the Thirtieth and the Thirty-Second General Assembly, as well as the other drainage acts which have, from time to time, been adopted. My views upon this subject are fully set forth in my dissent filed in the case of *Mason City and Fort Dodge R. R. v. Board of Supervisors,* 121 (Iowa) N. W. 39. I am not to be understood as discussing at this time the common law; for in my opinion it is not now involved. The only question here is one of statutory construction. What is meant by the term "cost of constructing the improvement across the right of way"? If nothing more were involved than the cost of the ditch, it would have been easy for the Legislature to have so said. But it did not do this. The term is "cost of improvement across its right of way." The improvement across the right of way necessarily involved the construction, or reconstruction, of a railway bridge, unless the company entirely abandoned its right of way. The improvement across the right of way would not be complete without a bridge. Without a bridge it would not be much of an improvement. The word "improvement" is broad and comprehensive, and, when applied as it is to

an improvement across a railway right of way, it certainly includes that which would be an improvement rather than a distinct disadvantage. I am thoroughly convinced, after reading the acts of the Thirty-Second General Assembly, which amend sections eighteen, nineteen, Acts 30th General Assembly, that the Legislature thought my construction of the latter act the only permissible one.

Much more might be said in support of this conclusion; but, as I have covered the question at some length in the dissent heretofore referred to, I need only refer to that for a further elaboration of my views. I doubt, however, if the plaintiff in this case is entitled to the entire cost of rebuilding or reconstructing the new bridge which was to take the place of an old one. Upon that question I have no opinion at this time. The case differs materially from the *Mason City* case by reason of the fact that in the *Mason City* case the company was compelled to put in an entirely new bridge at a place where there was none before the drainage district was established. I put these views in the form of a dissent because, upon the propositions argued by counsel, I agree with the views advanced by those representing the appellant.