Argued November 18, affirmed December 9, 1959

# MULTNOMAH COUNTY *v.* ROCKWOOD WATER DISTRICT
### 347 P. 2d 111

*Willis A. West,* Deputy District Attorney, Portland, argued the cause for appellant. With him on the brief were Leo Smith, District Attorney, and C. W. Pecore, Deputy District Attorney, Portland.

*Norman N. Griffith,* Portland, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Sloan and King, Justices.

KING, J., (Pro Tempore)

This is an action on an implied contract, brought by Multnomah County, a political subdivision of the state of Oregon, against Rockwood Water District, a domestic water supply corporation, seeking to recover $7,235.50, the sum expended in lowering the defendant's water pipes and installations on N. E. 155th and N. E. 157th Avenues, between Glisan and Halsey Streets, in Glendoveer Acres Plat No. 2115, Multnomah County, Oregon. The circuit court, sitting without a jury, found for the defendant and plaintiff appeals.

The principal question involved is whether the water district, a municipal corporation, is required to pay the cost of lowering its water pipes on the grad-

ing of a dedicated street, or whether such costs should be assessed to the adjacent property owners under ORS 371.605 to 371.660.

Many years prior to 1940 the Rockwood Water District was organized under ORS 264.110 and the following sections, for the purpose of supplying water for domestic use of the residents of that outlying district, bounded roughly from 139th to 222nd Streets, and from Division Street to the passenger track of Union Pacific Railroad, in Multnomah County, Oregon. It had pipe lines extending over considerable part of that property. These lines and installations were built at various times during the period of its existence, as need developed to supply water to the residents.

About 1941 or 1942 a fire destroyed most of the records of the district, so that it was somewhat difficult for the witnesses to testify as to the exact dates on which certain pieces of construction were started or finished.

The water mains, consisting of two-inch galvanized pipe, were laid in N. E. 155th Street and in N. E. 157th Street between N. E. Halsey Street and N. E. Holladay Street in 1941 and 1942. They were not completed south of N. E. Holladay Street to N. E. Glisan Street until 1944.

On April 3, 1942, Albert E. Bullier, trustee, declared and swore to a plat of Glendoveer Acres. This plat was approved by the county commissioners of Multnomah County on April 23, 1942, and filed of record by the county clerk on April 28, 1942. Later, on April 19, 1944, an additional plat was filed which further divided and marked off in lots the area south of N. E. Holladay Street to about N. E. Glisan Street

and between N. E. 152nd Avenue and N. E. 162nd Avenue.

The streets in these two plats of Glendoveer Acres were dedicated to the public and included the streets in which defendant's pipes are laid and which are the subject of this controversy.

The defendant water company, either itself or through Ward Cook Company, started laying its pipes and had a substantial portion of them installed before the original plat was filed and before the streets were dedicated. Those north of Holladay Street were installed and in use before the original plat and dedication. Those south of Holladay Street were almost completely installed before the completed plat and dedication of that area on April 28, 1944.

There seems to be no question of the water company's authority to install their pipes in the first instance. In fact, some of them, at least, were installed by the owner of the tract and paid for by the water company from the receipts. The water service was necessary and convenient for the home owners, as well as for the promoters of the plat. The pipes and installations were properly placed according to the way the streets were then graded and used. However, Multnomah County had nothing to do with, and no supervision over, the original grading of the streets, other than approving the plats as submitted.

On April 13, 1948, abutting property owners on 155th Avenue petitioned Multnomah County to improve the street at public expense. On or about April 19, 1948, this petition was denied by order of the board of county commissioners, which indicated that there were about 400 miles of dedicated streets in the county, and if any were taken over and improved, it should be in older subdivisions first.

In 1953 the owners of abutting property on N. E. 155th Avenue between N. E. Halsey and N. E. Glisan Streets petitioned Multnomah County to improve that street under the provisions of ORS 371.605 to 371.660. After a favorable recommendation by the roadmaster, the board of county commissioners, on May 4, 1953, ordered the street improved and that the cost of the improvement be assessed against abutting property. A similar petition was filed by the property owners on N. E. 157th Avenue, and a similar order made by the commissioners on August 15, 1953.

Multnomah County had the necessary engineering done to establish the grades and also estimates made of changing and lowering the water district's pipes and installations, as well as estimates of grading costs.

Prior to the start of grading or any construction work, the county made a demand upon the defendant, Rockwood Water District, that they move and lower their pipes to conform to the grade specifications at their own expense. This the water district refused to do and had their attorneys so notify Multnomah County, and they asked that those costs be assessed against the abutting property owners as a part of the improvement costs. This the county refused to do.

Thereafter Multnomah County called for bids on lowering and changing the pipes and installations. O. L. Soule, general contractor, was awarded this contract and was paid the sum of $7,235.50 for his work and materials used. This contract was awarded July 1, 1955, and the work completed July 22, 1955. The grading and oiling on N. E. Halsey Street were completed in the fall of 1955. The work on N. E. Glisan Street was completed on May 24, 1956.

The Multnomah County Commissioners accepted that portion of N. E. 155th Avenue between N. E.

Glisan Street and N. E. Halsey Street as a county road on November 8, 1955. They accepted N. E. 157th Avenue from N. E. Glisan Street to N. E. Halsey Street as a county road on June 7, 1956. Up until these dates those streets were dedicated streets of Glendoveer Acres and were not county roads.

1. It is an almost universal common-law rule that private utility companies are required to move at their own expense their water, electric and other lines, subject to the police power of the state, and whenever the health and public safety require this to be done, unless they are covered by special ordinance or law. *Transit Commission v. Long Island Railroad Co.*, 253 NY 345, 171 NE 565; *New Orleans Gaslight Co. v. Drainage Commission of New Orleans*, 197 US 453, 25 S Ct 471, 49 L ed 831.

The above rule does not, however, extend so far as to put the cost of relocation upon a private utility company when the change is for the benefit of other private utility companies or for the benefit of a municipality exercising a proprietary rather than a governmental function. *City of Los Angeles v. Los Angeles Gas & Electric Corp.*, 251 US 32, 40 S Ct 76, 64 L ed 121; *New York & Queens Electric Light & Power Co. v. City of New York*, 221 App Div 544, 224 NYS 564.

In *Transit Commission v. Long Island Railroad Co.*, supra, the Court of Appeals of New York in reversing the appellate division said:

"* * * that the common law rule, as above stated, applies to the cost of all such changes, unless the Legislature provides otherwise, and this it has failed to do. * * *

"* * * The general rule is and always has been, as we have above stated, that these corpo-

rations must relocate their properties in the highway when public necessity requires."

The plaintiff, Multnomah County, cites and relies on the case of *Walker v. Township of North Bergen,* 84 NJL 248, 86 A 63 (1913). In fact, they state in their brief that it is the only case found where the question of including the cost of lowering water pipes in an assessment against abutting property was squarely before the court.

An examination of the Walker case, supra, shows that the pipes to be shifted were those of the Hackensack Water Co. and the gas pipes of the Public Service Co. Both companies were private corporations. Their pipes interfered with the construction of a sewer by the township of North Bergen. The court pointed out that the evidence showed that the private companies were mere licensees, and that the costs of shifting their pipes could not be shifted to the taxpayers. The court cited the doctrine in *New Orleans Gaslight 'Co. v. Drainage Commission,* supra.

In the case at issue the defendant, Rockwood Water District, was and is a municipal corporation, organized by the public, under Oregon laws, for the primary purpose of supplying water to people of the district for domestic purposes. Its operations are necessary and essential to the public health and safety of the people of the district. While it might be liable for torts on a basis of acting in a proprietary capacity, yet its business is transacted primarily for the public benefit. In that regard it differs materially from a private corporation.

The Rockwood Water District did not place its pipes and facilities at the sufferance of or by license of Multnomah County. Glendoveer Acres was not platted and there were no streets dedicated at the

time the defendant started laying its pipe; in fact, a considerable part of the system was actually in use before the first dedication was made. It placed its original pipes with the actual or implied consent of the owners of the property.

On April 28, 1942, when the original plat of Glendoveer Acres was filed, after approval and acceptance by the Portland City Planning Commission, the Multnomah County Sheriff, the Multnomah County Assessor, the county surveyor, the county roadmaster, and the county commissioners, the plaintiff, Multnomah County, had knowledge, or by the exercise of reasonable care should have had knowledge, that the water pipes of the defendant were in the dedicated streets of Glendoveer Acres plat, and should have known that they claimed some right there. This is an entirely different situation from those cases where a county, state or municipality allows a private corporation to use their streets to place their pipes or utility lines, and to which the above-mentioned common-law rules apply.

Multnomah County contends, and we think rightly so, that it had no power to improve the dedicated streets, until they were taken over and made county roads, except by provisions of ORS 371.605 to 371.660. In the instant case it was acting solely under those statutes. Its power was derived from them, and it would be bound by them and limited in its authority by their provisions.

The method of applying for the improvement is provided as follows:

"ORS 371.615. If in an uncorporated area the owners of land abutting on a platted street, dedicated public road or county road desire to improve the road or street, they may present a petition signed by not less than 70 percent of the owners

of the land representing not less than 70 percent of the land abutting on the proposed improvement to the county court praying for the improvement. The petition shall describe the road, street, curbs or sidewalk to be improved or constructed, designating where the improvement shall be made and defining the nature of the improvement desired."

ORS 371.625 provides for investigation and estimation of costs of improvement by the county engineer. ORS 371.630 provides notice to property owners of the engineer's report and the method of filing objections. ORS 371.635 provides for the county court order for improvement and notice that lien of assessment will be made.

ORS 371.640 provides for the engineer to compile improvement costs, source of payment, etc. It provides generally that the improvement costs, plus not more than 10% engineering costs, shall be made by the county and then reimbursed by assessments against the land. It does provide that costs for improvements in intersections may be borne by the county. Otherwise, all costs are mandatorily assessed to the property owners.

The plaintiff, Multnomah County, did not attempt to assess the cost of changing and lowering the water pipes to the property owners as a part of the improvement, although they were requested to do so by the water district and were notified that the water district would not be responsible for such costs. The county did not attempt to have a court adjudication or interpretation of the law before going ahead with the expenditures, and relied on their claimed authority to collect such costs from the defendant.

■ Under the facts presented in this case, Multnomah County could not hold the Rockwood Water District responsible for the costs of lowering the water

pipes under the common-law rule as set out above, for the reasons: (1) that the Rockwood Water District was a municipal corporation organized for the purpose of furnishing a domestic water supply that was necessary to the health and safety of the people of the district; (2) at the time the work was performed, Multnomah County had not taken over the streets as county roads, and its authority to improve was based on and derived from the statutes above mentioned; and (3) the water district had rights to use the street prior to the dedication, of which Multnomah County knew or should have known.

■ Likewise, in this case the statutes ORS 371.605 to 371.660 do not contain specific, nor any authorization for the county to expend the money it did in changing the water pipes and installations and collecting the same from the water district. It provides specifically for assessment against the abutting property owners and not for charges and assessments against the defendant or any other third person.

■ The statutes seem clear and explicit in their terms, and under the well-recognized rules of construction, words should not be added to nor subtracted from them. So far as we are able to ascertain, they clearly express the intent of the legislature. *Cabell et al. v. Cottage Grove et al.,* 170 Or 256, 272, 130 P2d 1013; *Burnett v. Union Bridge Company,* 117 Or 566, 245 P 308, 45 ALR 527.

If these statutes were construed as the plaintiff asks, very serious financial damage could and probably would be done the water district, and their duties to the public seriously impaired. The dedicated streets here in question covered only a small part of the dedicated streets in its entire water system.

Multnomah County probably should not be bur-

dened with the expense of changing the pipe line either, although it is noticeable from its orders in evidence in this case that it does pay a substantial part in moving pipe lines on county roads. It, however, did not attempt to assess the costs to the property owners, and as before mentioned, did not attempt a prior adjudication of its rights and duties. It had the right to proceed under terms and provisions of these statutes, or it could have accepted the streets as county roads and proceeded under the laws applicable to county roads.

The trial judge, with many years' previous experience as district attorney and county adviser for the plaintiff, heard the case and made findings for the defendant water district, and concluded that the plaintiff was not entitled to recover from the defendant under the theory of implied contract. We agree.

Judgment is affirmed.