SUMMERS, Justice
(dissenting from the opinion on rehearing).
Since the rehearing presented no matter not thoroughly considered originally, there is no cause to abandon my original views.
It is to be noted that the majority, to support its position and in rejecting the reasons originally assigned, has relied heavily upon the case of New Orleans Gaslight Company v. Drainage Commission, 111 La. 838, 35 So. 929 (1903), affirmed 197 U.S. 453, 25 S.Ct. 471, 49 L.Ed. 831. That case, as viewed by the United States Supreme Court, stood for one proposition: “ * * * uncompensated obedience to a regulation enacted for the public safety under the police power of the state was not taking property without due compensation.” (Emphasis added.) It was observed then (197 U.S. 453, 462, 25 S.Ct. 471) that the relocation of *615 the pipes of the Gaslight Company did not constitute a taking of its property and the injury (expense) sustained in the relocation was damnum absque injuria,.
The significant difference between the Gaslight Company case and the case at bar is that in the former the exercise of the police power was considered proper inasmuch as it was invoked to regulate the use of the Gaslight Company’s property. What was required by - that regulation was a "shifting” of the mains and pipes of the Gaslight Company “to another part of the street” under an implied obligation of the company in its franchise to do just that. The difference, then, between that case and the case at bar is obvious.
In the case at bar, involving only one segment of the highway project, what is being required is a destruction of the existing installation of the utilities. These installations are being entirely displaced from the area involved.' To continue their obligations to furnish service under their franchises, the utilities will have to find new rights-of-way for the location of their facilities, and where these facilities, lines and poles, are to cross the highway, it will be necessary that they be redesigned at considerable additional expense to meet more burdensome requirements imposed by the highway project. It is to be kept in mind, too, that what is involved here is only one segment of this highway project within the city of Shreveport—there will undoubtedly be other displacements of these utilities within the city in connection with the same project. Unlike the Gaslight Company case, there can be no implication that the franchise contemplated an obligation on the part of the utilities to abandon their use of substantial portions of the streets and alleys altogether. The city’s refusal to call upon them for the removal makes this quite clear. To conclude' otherwise would make the franchise meaningless.
Police power, whatever it is, cannot prevail over safeguards contained in our State and Federal Constitutions. These safeguards are contained in the fifth amendment of the Federal Constitution and in the Louisiana constitution where it is declared at the very outset (Art. I, Sec. 2) that “ * * * private property shall not be * * * damaged except for public purposes and after just and adequate compensation is paid.” (Emphasis added.) If it were intended that this provision was to be subordinate to police power, provision would and should have been made to that effect like the suspension of habeas corpus in times of war or insurrection. This was not done and the reason is plain. This constitutional provision, like due process of law, is a restraint upon the exercise of governmental authority, including police powers. In my view the facts at bar exemplify the very situation Article I, Section 2 of the Constitution was intended to safeguard against.
*617 Furthermore, what reasons could exist for holding that the police power can be invoked here to surmount the constitution • of this State. The only justification advanced is that such a recourse will result in monetary savings to the Highway Department. This is meagre cause to disregard such a fundamental constitutional safeguard.
Justice Holmes expressed the principle -which is applicable to this case as follows:
“The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for ■such use without compensation. A similar assumption is made in the decisions upon the Fourteenth Amendment. * * When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private •property disappears. But that cannot be accomplished in this way under the Constitution of the United States. * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter ■cut than the constitutional way of paying for the change.” Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158; 67 L.Ed. 322.
The majority, though made aware of the danger referred to above, has nevertheless disregarded plain, explicit constitutional safeguards in order to reach its decision.
I respectfully dissent.