CONSUMERS POWER COMPANY, A
Michigan Corporation,
Plaintiff-Appellant,

v.

Douglas M. COSTLE, Administrator of
the United States Environmental Pro-
tection Agency, Defendant-Appellee.

No. 79–1334.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 27, 1979.

Decided Feb. 14, 1980.

Lawrence B. Lindemer, Vice President and Gen. Counsel, W. E. Wisner, Jack D. Shumate, Jackson, Mich., for plaintiff-appellant.

James K. Robinson, U. S. Atty., Detroit, Mich.; Lee DeHihns, III, General Counsel, EPA, Washington, D. C., Joshua I. Schwartz, U. S. Dept. of Justice, Washington, D. C., James W. Moorman, Asst. Atty. Gen., Dirk D. Snel, Atty., App. Section, Dept. of Justice, Washington, D. C., for defendant-appellee.

Before EDWARDS, Chief Judge, MERRITT, Circuit Judge and PECK, Senior Circuit Judge.

EDWARDS, Chief Judge.

The plaintiff in this case, Consumers Power Company, is one of two major public utilities in Michigan. It supplies both electricity and natural gas to home and industrial users in most of out-state Michigan. In this suit, filed against the Environmental Protection Agency, Consumers sought adjudication in the District Court of its claim that it was entitled to $5,000,000 out of the total of federal funds which had been granted by EPA to three Michigan cities—Jackson, Bay City and Flint—to finance waste water and sewer projects.

The federal funds at stake were appropriated under Title II of the Clean Water Act, 33 U.S.C. §§ 1281–1297 (1976). The complaint, however, does not rely upon any language in that statute. It does rely upon a statute passed by Congress in 1970 which pertains, in general terms, to federal acquisition of private property. The act is called the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601–4655 (1976). Its terminology is certainly broad enough to be applicable to any acquisitions of real property which the municipal grantees under the Clean Water Act might make. This fact, however, as District Judge Cornelia Kennedy found, does not automatically redound to appellant's favor, since the complaint makes no claim that the cities are engaged in acquiring any property rights now owned by Consumers.

What Consumers does claim is that it is being forced by the sewer projects financed in large measure by the federal government to "relocate" its gas mains in the public streets of the three cities which the sewer projects contemplate employing. The argument is that the sewer construction will disturb the terrain in the streets where Consumers' gas pipes have been laid, and thereby occasion dangerous leaks and possible explosions of the gas which the mains carry. Consumers' complaint argues in effect that such damage is so certain that it had the right to anticipate it before it happened and to replace its old mains with new mains and then seek reimbursement from federal funds. Consumers seeks a court decree which would require EPA to get assurances from the three cities involved that these replacement costs would be reimbursed to Consumers before the federal agency releases the sewer funds to the cities.

█ We leave aside for the moment obvious problems pertaining to jurisdiction and timing of this action. We assume as we must (because this complaint was dismissed on motion and without trial) that Consumers has suffered damages, but the nature of the damages claimed to be involved is of major concern in this case. The District Judge on this issue held that costs required of this gas utility by the carrying out of a sewer program which did not oust it from its easements in the streets involved did not create a right to damages for costs incident to the sewer program which Consumers might have to bear. This appears to be the law of Michigan and of most states of the United States. The District Judge's discussion of this issue supports this conclusion and bears quotation at this point:

It has been held, as the plaintiff argues, that a grant of the right to place and maintain pipes in a street is the grant of a property right. *See, e. g., Owensboro v. Cumberland Telephone & Telegraph Co.*, 230 U.S. 58, 65, 33 S.Ct. 988, 990, 57 L.Ed. 1389 (1913). However,

the utility, which normally acquires its easement through a gratuitous grant, does not thereby acquire a right to any specific location in which to lay its pipes. *New Orleans Gaslight Co. v. Drainage Comm'n of New Orleans*, 197 U.S. 453, 461, 25 S.Ct. 471, 473, 49 L.Ed. 831 (1905). *Tennessee v. United States*, 256 F.2d 244, 258 (6th Cir. 1958). Thus, in the present case, although plaintiff has incurred and will incur costs as the result of the federal grants to the cities involved, it has not lost any property right, since it may still maintain its pipes in the same ground. *New Orleans Gaslight Co., supra*, 197 U.S. at 460, 25 S.Ct. at 473; *Detroit v. Michigan Bell Telephone Co.*, 374 Mich. 543, 554–55, 132 N.W.2d 660 (1965) (dissent), *cert. denied*, 382 U.S. 107, 86 S.Ct. 256, 15 L.Ed.2d 191 (1965); *cf. Center Line v. Michigan Bell Telephone Co.*, 387 Mich. 260, 196 N.W.2d 144 (1972) (reimbursement dependent upon specific legislative provision). It certainly cannot be argued that the cities of Flint, Jackson, and Bay City have now acquired the right to lay gas pipeline or that they have taken that right from the plaintiff. In *Detroit Board of Education v. Michigan Bell Telephone Co.*, 51 Mich.App. 488, 502, 215 N.W.2d 704 (1974), aff'd, 395 Mich. 1, 232 N.W.2d 633 (1975), the Michigan Court of Appeals noted: "A distinction can be drawn between the shift of equipment to accommodate a drainage system and the total extinguishment of a vested property right." *See generally Center Line v. Michigan Bell Telephone Co., supra,* (right of reimbursement resulting from legislative provision in Rehabilitation of Blighted Areas Act; no common law right).

Consumers, however, does not really dispute the holding entered by Judge Kennedy above as to the effect of state law. Rather, it seeks to rely upon the Uniform Relocation Assistance Act (URA) as having created rights to compensation for "relocation" of its gas mains which would not otherwise have existed under state law. It is presumably for this reason that it has not in this litigation joined, as defendants, the three Michigan cities which are actually going to be the owners of the sewer projects in question.

In making this "relocation" argument, however, Consumers is immediately confronted by Title 42 U.S.C. § 4602(a) (1976), which says:

> The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

In response to this, Consumers argues that these provisions apply only to § 4651 of the URA and not to § 4655 upon the terminology of which Consumers relies. Section 4655, however, incorporates § 4651 (which § 4602(a) says creates "no rights or liabilities") and refers to §§ 4652, 4653 and 4654, none of which apply to the circumstances of this case since EPA is not condemning or acquiring any property interest in this case.

As to this aspect of the complaint, Judge Kennedy also held that as a matter of law, Consumers had lost no property rights and the cities and EPA, of course, had acquired none, and that the plaintiff was not a displaced person within the purposes of the Uniform Relocation Assistance Act.

We believe that she was entirely correct. We recognize that there is District Court language in one case relied upon by the plaintiff which might tend to support plaintiff Consumers' arguments. *Whitman v. State Highway Commission of Missouri*, 400 F.Supp. 1050 (W.D.Mo.1975). We have read the *Whitman* opinion and respectfully decline to follow it.

■ It also appears from amicus briefs representing national gas utility organizations which were filed before the District Court that a serious effort will be maintained to achieve final resolution of Consumers' claims. We believe, however, that resolution on the merits of the gas utilities' claims cannot be had upon this record.

Plaintiff's best statement of its argument on the merits is found in the amicus brief filed by American Gas Association before the District Court.

[T]he reimbursement of utility relocation costs necessitated by federally assisted sewer construction projects is clearly supported by the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 [1] . . .

[1] 42 U.S.C. § 4601 *et seq.*

EPA's failure to compensate utility relocation costs imposes a totally unfair and inequitable burden on utility ratepayers to subsidize projects costs; and a uniform policy of reimbursement of necessary utility relocation costs would promote orderly community planning and budgeting of other sewer construction projects undertaken with Federal financial assistance. This goal is fully consistent with Federal energy policy to promote the increased use of natural gas at competitive prices as stated by the Congress, the President of the United States and the Department of Energy over the past year.

As we have previously pointed out, however, the sections of URA relied upon by Consumers do not create "any element of value or damage not in existence immediately prior to January 21, 1971." 42 U.S.C. § 4602 (1976).

Further, the merits of the argument just advanced appear to this court to be much more appropriate for legislative resolution than for judicial solution. It is clear to us that up to this point, the competing interests between public and private utilities in the exercise of their respective utility easement rights in the same street are matters of state property law.

The amicus brief filed by the American Gas Association in the District Court informs us that 16 states have in fact recognized a problem and granted some form of relief. Michigan, however, is not claimed to be among this number. The complaint which the District Judge had before her did not assert that any one of the three municipalities here involved had issued an order or purported to require that Consumers remove any single piece of gas pipe from any single street. It also did not claim that Consumers was threatened with the loss of its easement rights in any single street. Read generously, the complaint does appear to claim that the new sewer construction did pose such a serious threat to the integrity of the gas mains as laid in the streets that Consumers was required to replace them with new and presumably stronger mains in advance, in anticipation that only new mains would withstand the interference with the terrain occasioned by the contemplated new sewer construction.

Plainly, such an argument leaves open questions as to how old were the existing gas mains which have now been replaced and what portion of their costs had been previously (perhaps long since) amortized. Indeed, what Consumers seeks might actually prove to be the replacement of much of its amortized capital equipment at the expense of the cities and the federal government.

A fair formula for resolving this division of costs, if indeed such a complex matter is to be undertaken at all, would require an enormous amount of technical testimony which no federal court ought to be required to hear in the first instance.

There is, of course, no doubt that if the states leave unresolved a serious matter of fair allocation of costs between those of our citizens who pay for the services of the gas utility and those who pay for the services of sewer utilities that the Congress could, if it wished, conduct appropriate hearings on the problems outlined above to arrive at fair formulae for such division of costs. State subdivisions, like the three cities concerned here, could be required to adhere to such rules on penalty of being deprived of federal allocation of sewer funds. To this date, however, no such problem has been considered seriously by Congress, and no such legislation has been formulated and passed.

■ We agree with the District Judge that the present complaint states no cause of action under presently applicable state and federal law. We also hold that the cities in any event would be necessary parties to the litigation. In addition, plaintiff has not exhausted its administrative remedies under 42 U.S.C. § 4633(b)(3) (1976) and

 

40 C.F.R. § 4.104 (1979), and the case is not ripe for decision.

The District Court is affirmed.