# Edison Electric Light & Power Company, Appellant, v. Merchants' & Manufacturers' Electric Light, Heat & Power Company.

*Electric light companies—Corporations—Conflicting interests—Equity.*

As between electric light companies exercising similar franchises upon
the same street, priority carries superiority of right. Equity will adjust
the conflicting interests as far as possible and control both so that each
company may exercise its own franchises as fully as is compatible with the
necessary exercise of the other's. But if interference and limitation of
one or the other are unavoidable, the latter must give way, and the fact
that it is under contract with the city for work of a public nature, does not
alter its position, or give it any claim to preference.

On a bill by one electric light company against another, equity will en-
join not only wanton or negligent damage by the defendant, but all inter-
ference which is not strictly unavoidable, and in regard to keeping defend-
ant's wires clear of those in bona fide use by the plaintiff, and necessary for
its business, the injunction should be made absolute without regard to ex-
tra cost of other methods.

A decree in a suit in equity by one electric light company against
another for an injunction, will be reversed where the record shows that
there is no proper finding of facts upon which the decree can be sustained.

Argued April 29, 1901.   Appeal, No. 198, Jan. T., 1900, by plaintiff, from decree of C. P. Erie Co., Feb. T., 1898, No. 4, on bill in equity in case of Edison Electric Light & Power Company v. Merchants' & Manufacturers' Electric Light, Heat & Power Company and the Western Electric Company.   Before McCollum, C. J., Mitchell, Fell, Brown and Potter, JJ. Reversed.

Bill in equity for an injunction.

Walling, P. J., found the facts to be as follows:

1. That plaintiff, the Edison Electric Light & Power Company, was duly incorporated in 1886, and afterwards, upon surrender of its charter, received a new charter under the Act of May 8, 1889, P. L. 136.

That the said Edison Electric Light & Power Company was granted a franchise from the city of Erie by ordinance approved February 24, 1886, city digest, page 129, " to erect and maintain poles and wires for the purpose of conducting electricity to be used for light, heat and power purposes upon the streets, lanes and alleys of this city (Erie) as may be from time to time required by said company aforesaid."

2. That in pursuance of its charter and said ordinance, said Edison Electric Light & Power Company did construct its line and has been transacting the business for which it was organized through and upon the streets, lanes and alleys of the city of Erie continuously since 1886.

That at the time of the filing of the bill in this case it had a pole line constructed generally throughout the streets, lanes and alleys of the city of Erie.   That in a small portion of said city there were poles with six cross-arms in actual use by its wires and for the transaction of its business, and that in other portions of the city the said company had poles with from one to six cross-arms each.   That it had adopted and was gradually conforming to a standard pole thirty feet high out of the ground, and had actually conformed to said height of pole throughout a greater portion of its line, which fact was apparent upon an inspection of its line.

3. That the business of said company has steadily and largely increased annually since 1891, and that it is still increasing, and will probably continue to increase in the future, and that

prior to the first Monday in April, 1898, it had for some years been engaged in the business of furnishing public lights for the streets of the city of Erie, but that since said date it has been engaged and is now engaged only in furnishing commercial and domestic lights, and is doing no public lighting of the streets, avenues, alleys or public grounds of the city of Erie, its contract for said public lighting having expired on the first Monday of April, 1898.

4. That the defendant, the Merchants' & Manufacturers' Electric Light, Heat & Power Company, is a corporation duly incorporated under the laws of Pennsylvania, and doing business in the city of Erie, and that it was duly granted a franchise from the city of Erie by ordinance duly approved on April 4, 1894, as appears in city digest, page 130, " to use and occupy any or all of the streets, avenues or alleys in the city of Erie, Pennsylvania, with its poles and other appliances pertaining to electricity necessary for the said company in conveying and carrying its light, heat and power, and for the successful operation of its business."

5. That prior to granting of either of said franchises the city of Erie, by general ordinance approved October 23, 1882, relating to the subject of poles and wires, city digest, page 212, provided, inter alia, as follows: " That the license granted to use the streets for the purposes aforesaid may be revoked at any time, and that when revoked said poles and wires shall be immediately removed from the streets of said city; " but that the said city of Erie has never taken any express action revoking the licenses granted to either of the aforesaid corporations.

6. That on November 4, 1897, the mayor and councils of the city of Erie awarded to the Merchants' & Manufacturers' Electric Light, Heat & Power Company, one of the defendants, the contract for lighting the streets, alleys, avenues and public grounds of the city of Erie with electric arc lights, for a period of five years, beginning on the first Monday of April, 1898; said company being the lowest and best bidder therefor, which said award was duly ratified by ordinance approved November 23, 1897, and that the said city, in pursuance of said ordinance, duly executed a contract with said defendant company for the construction and maintenance of a plant and line for the purpose of carrying out said contract for public lighting.

7. That soon after the awarding of said contract the said defendant company proceeded in accordance therewith to construct an extension of its lines and plant, for the purpose of carrying out the provisions of said contract, and that prior to the said first Monday of April, 1898, had expended thereon the sum of nearly $60,000, all of which expenditure had been contracted for and a large proportion of the same actually made prior to the filing of plaintiff's bill in this case.

8. That the said extension of the plant and lines of the defendant company was for the sole purpose of carrying out said contract for said lighting, and was and is being used for no other purpose, and was not constructed for nor being used in furnishing any private or commercial lights whatever; and that all of the interferences complained of by plaintiff company with its lines, are upon the line of said extension so constructed and used for public lighting, and are at points where the poles and wires of both the plaintiff and defendant companies are located, wholly upon the public streets, lanes, alleys, avenues and public grounds of the city of Erie.

9. That the plaintiff has in use on its lines wires conducting electric currents of from 110 to 3,000 volts, and that the said Merchants' & Manufacturers' Electric Light, Heat & Power Company uses wires conducting electric currents of 6,250 volts. That voltage under 500 volts is recognized by electrical authorities as low tension; from 500 to 3,000 high tension, and above 3,000 volts extra high tension. That in lines conducting high and extra high tension currents it is necessary to use extra care in the construction of the line to prevent loss of life and injury to property.

10. That it is the general practice and proper construction to place electric wires twenty-two inches apart vertically and twelve inches apart horizontally, and that except in very exceptional cases the wires of one company should not be placed or suffered to remain at a less distance than that above stated to the wires of another company. And that, as a general rule, the electric wires of one company should not pass between those of another company; but where the space between the wires of such other company is ample, and where the wires of both companies are sustained by rigid supports standing near to the place of passage, the wires of one company may, with

reasonable safety, and frequently are, passed through between the wires of another company.   That the electric wires of one company should always be so placed and maintained as not to come in contact with similar wires of another company, as the natural result of such contact is damage to property and danger to life.

11. That prior to the filing of plaintiff's bill, and about December, 1897, the defendant, the Merchants' & Manufacturers' Electric Light, Heat & Power Company, contracted with the Western Electric Company, a corporation of the State of Illinois, to extend the pole line of the first named company through the streets of the city of Erie, and over and along most of the streets in which plaintiff company was operating; and that in the construction of the said extension of said line said Western Electric Company strung the wires of the Merchants' & Manufacturers' Electric Light, Heat & Power Company in many places in dangerous proximity to the wires of the plaintiff company; and in some places through and between the wires of the plaintiff company.   That subsequently to the filing of plaintiff's bill, a very large majority of such interferences were remedied by the defendants, but up to the time of taking the last testimony in this case, on April 14, 1898, the defendants had not so adjusted their lines as to be entirely free from interferences with the plaintiff's line.

12. That at the time of the construction of said extended lines by defendants, the city of Erie was and still is a very difficult city in which to construct an electric line, owing to the unusual number of electric wires already existing in its streets, including the telegraph wires of different companies, the telephone wires of at least two different companies, the telegraph wires of the railroad companies, the wires of the Erie Electric Street Railway Company, the city police call and fire alarm wires, and many others, and also the electric light wires of the plaintiff; and in addition to which the plaintiff claimed the right to hold for its future use practically all the space where wires could be placed to a height of thirty feet along the streets where its lines have been extended; and that after the said city of Erie had entered into the contract with the said defendant for the street lighting, the plaintiff company, in order to hold the said unoccupied space claimed by it, in many places strung

numerous dead wires along its poles and over street intersections, in such a way as to embarrass the defendant in the construction of said extension of its line.

13. That the wires of the telegraph and telephone companies are placed in the streets considerably higher than those of the plaintiff company. That at some points it is not practicable to clear plaintiff's lines giving it the space claimed, without coming in contact with the lines of the telegraph and telephone companies, and that it is not good construction to place the electric light wires above those of the telephone companies, for in the event of an accident to an electric light wire, causing it to fall upon the telephone wires, it would naturally result in the destruction of the telephone wires, and it might result in transmitting to such telephone wires such a current of electricity as would not only destroy the instruments to which they were attached, but might cause injury to the operators or even set fire to buildings; and besides, it would not have been practicable, for the defendant to have constructed its extended line over all the other wires in the city—it would have required at some points poles at least seventy-five feet in height, which would have been unnecessarily expensive; and besides, a line when so constructed, would be inconvenient and expensive to operate.

14. The said contract between the city and the Merchants' & Manufacturers' Electric Light, Heat & Power Company required the said company to furnish 359 arc lights at street intersections and other public places, and at the same points previously occupied by the plaintiff's arc lights while it held the contract for city lighting, and I am not satisfied that the defendant, in the construction of its line as it now exists, after the correction of the interferences as above stated, has inflicted any wanton, negligent or unnecessary injury to the electric lines and property of the plaintiff.

15. The poles of both plaintiff and defendant appear to have been placed in the streets at the points designated by the proper municipal authorities.

### LEGAL CONCLUSIONS.

1. That as between the Edison Electric Light & Power Company, the plaintiff, and the Merchants' & Manufacturers'

Electric Light, Heat & Power Company, defendant, so far as refers to a use of the streets for purposes of commercial or private lighting, the plaintiff, by virtue of its prior franchise and occupation of the streets, has the right of way.

2. As between said plaintiff, engaged as at present exclusively in commercial and private lighting, and defendant, so far as it is engaged exclusively in lighting the public streets by virtue of a city contract, the defendant, although holding the later franchise, by virtue of the public character of its business, has the paramount right of way, so far as is necessary to reach the places where the contract calls for street lighting, by a direct and practical route; but at the same time the defendant, in the construction of its line for the purpose of such street lighting, has no right to do the property of plaintiff any wanton, negligent or unnecessary damage, and must at all places keep its lines clear from those in actual use by plaintiff wherever it can be done without extra cost.

3. That as against the defendant so engaged in public lighting, the plaintiff has no right to reserve any extra space which it may think will be necessary to accommodate the future growth of its business.

4. That it is the duty of the city of Erie to light its streets in order to facilitate public travel thereon, and that the defendant, who has a valid contract with the city for such lighting, has for that purpose all the rights in the premises which the city would have if engaged in lighting its own streets.

5. That the injunction heretofore granted should be dissolved, and that the plaintiff's bill should be dismissed, and that the defendants' cross-bill should also be dismissed, and that the defendants should pay the docket costs, and that neither plaintiff nor defendants should file any bill for the subpœnaing or attendance of witnesses.

*Error assigned* was in dismissing the bill.

*Frank Gunnison,* for appellant.—The appellant claims the right to have a reasonable space reserved for future growth through which the defendant shall be restrained from erecting its line : Phila., etc., R. R. Co. v. Lewis, 33 Pa. 33 ; Dana v. U. S. Bank, 5 W. & S. 223 ; McMasters v. Reed, 1 Grant's Cases,

36; Brice's Ultra Vires (2d ed.), p. 86, sec. 2; Cleveland & Pittsburg R. R. Co. v. Speer, 56 Pa. 325.

There was no finding of fact to the effect that it was not practicable for the defendant to construct its lines so as to reach the several points agreed to be lighted, and at the same time leave to the plaintiff reasonable space for the future necessities of its business, with no other obstacle than the increased cost of construction from the use of higher poles in such places as present conditions require higher poles, such places being not numerous. The plaintiff requested the court to find that increased expense was no reason for denying the relief prayed for, which request was not complied with. That such is the law so far as private and commercial lighting is concerned cannot be disputed. The principle applicable has been asserted in numerous cases. It has been applied by this court in a number of cases in which the statute prohibiting grade crossings in the construction of railroads was under consideration, and it has uniformly been held that the word "practicable" in that statute means physically practicable, and that the expense of an overhead crossing is a matter not to be considered : Williams Valley R. R. Co. v. Lykens, etc., St. Ry. Co., 192 Pa. 552.

That the electric corporation holding the prior franchise has the paramount right to the use of the street has been decided in many cases, and the one holding a subsequent franchise has been frequently enjoined from erecting its line in dangerous proximity to the lines of the older one: Bell Telephone Co. v. Belleville Electric Light Company, 12 Ontario Rep. 571; 2 American Electric Cases, 330; Consolidated Electric Light Co. v. Peoples Electric Light & Gas Co., 94 Ala. 372; 4 Am. El. Cas. 250; Rutland Electric Light Co. v. Marble City Electric Light Co., 65 Vt. 377; 4 Am. El. Cas. 256; W. U. Tel. Co. v. Los Angeles Electric Co., 76 Fed. Repr. 178; 6 Am. El. Cas. 202; W. U. Tel. Co. v. Guernsey, etc., Electric Light Co., 46 Mo. App. 120; 3 Am. Elec. Cas. 425; Nebraska Tel. Co. v. York Gas & Electric Light Co., 27 Neb. 284; Keasbey on Electric Wires (2d ed.), secs. 199, 200, 201, 202, 203.

*Henry E. Fish*, with him *John S. Rilling*, for appellees.— Irreparable injury is the foundation for intervention by injunc-

tion; not irreparable because so small that it may not be estimated, but because likely to be so great as to be incapable of compensation in damages. There must be injury and damage both to justify injunction. If the injury be doubtful, eventual or contingent, equity will not enjoin: Rhodes v. Dunbar, 57 Pa. 274.

Defendants contend that under the language of the said acts of assembly taken in connection with the charter and ordinances defining the powers and rights of the plaintiff, the city of Erie had the paramount right to the use of the streets for erecting a pole line to light the same; and that its contractor had the same right that the city would have had if it had been constructing the line itself; and that as against such rights the plaintiff could hold no reserved space for future business, when it was necessary for the city or its contractor to use such space in order to construct its lines to the points to be lighted, by the nearest, cheapest and most practicable route.

But even without the " unrestricted right " to erect and maintain electric lines for street lighting conferred by the said act, it is respectfully submitted upon the broad principle of the superiority of public to private rights in the use of the streets, that the defendants were bound to respect no such attempted reservation of space: Dillon on Municipal Corporations, sec. 97; Elliott on Roads and Streets, 367; Kopf v. Utter, 101 Pa. 27; Hudson River Telephone Co. v. Watervliet Turnpike & R. R. Co., 121 N. Y. 403; Tuttle v. Brush Electric Illuminating Co., 1 Am. Electrical Cases, 508; New Castle v. Electric Co., 16 Pa. C. C. Rep. 663.

The lighting of streets, as well as the control of poles and wires thereon, is an exercise of the police power. It is a firmly established principle that all franchises are granted subject to the police power of the municipality: Dillon on Municipal Corp. sec. 3.

The courts have repeatedly and uniformly held that an electric street car company, though its franchise be of later date, has the paramount right to the use of the streets as against a previously established telephone company, because it facilitates travel and the latter does not, and that interferences with the telephone company must be remedied at its own expense: Central Penna. Telephone & Supply Co. v. Wilkes-Barre and West

Side Ry. Co., 11 Pa. C. C. Rep. 417 ; Cincinnati Inclined Plane Ry. Co. v. City & Suburban Telegraph Assn., 48 Ohio, 390 ; Wisconsin Telephone Co. v. Eau Claire Street Ry. Co., 3 Am. Elec. Cases, 383 ; East Tennessee Tel. Co. v. Knoxville Street Ry. Co., 3 Am. Elec. Cases, 400.

OPINION BY MR. JUSTICE MITCHELL, July 17, 1901 :

This decree must be reversed for want of any proper finding of facts upon which it can be sustained.   The gravamen of the bill is that the complainant being in the lawful exercise of its franchises with the consent of the city, is interfered with at present and in danger of further interference in the future, by the defendant placing its wires so as to cross or run between, through and among the plaintiff's wires in dangerous proximity thereto, and through the space already occupied by plaintiff, and secondly through adjacent space necessary to the plaintiff for the growth and future operation of its business.   The answers of defendants deny the danger of interference by proximity of the wires, and aver that complainant is occupying an unreasonable and unnecessary space not in good faith for the purposes of its business, but with dead wires merely to obstruct and exclude any other company from the streets.

The court unfortunately made no conclusive finding on these disputed points, though it did find in a general way :

1. That the defendant had strung its wires "in many places in dangerous proximity to the wires of the plaintiff company, and in some places through and between the wires of plaintiff company.   That subsequently to the filing of plaintiff's bill, a very large majority of such interferences were remedied by the defendants, but up to the time of taking the last testimony in this case, on April 14, 1898, the defendants had not so adjusted their lines as to be entirely free from interferences with the plaintiff's line."

2. That "after the city of Erie had entered into the contract with the defendant for the street lighting, the plaintiff company, in order to hold the said unoccupied space claimed by it, in many places strung numerous dead wires along its poles and over street intersections, in such a way as to embarrass the defendant in the construction of said extension of its line."

3. That the court was "not satisfied that the defendant, in

the construction of its line as it now exists, after the correction of the interferences as above stated, has inflicted any wanton, negligent or unnecessary injury to the electric lines and property of the plaintiff."

On these findings both parties appear to be somewhat in fault, and there is no accurate determination of their respective rights, the court being of opinion that this was unnecessary for the reason set out in the legal conclusions that " as between said plaintiff, engaged as at present exclusively in commercial and private lighting, the defendant, so far as it is engaged exclusively in lighting the public streets by virtue of a city contract, the defendant, although holding the later franchise, by virtue of the public character of its business, has the paramount right of way, so far as is necessary to reach the places where the contract calls for street lighting, by a direct and practical route ; but at the same time the defendant, in the construction of its line for the purpose of such street lighting, has no right to do the property of plaintiff any wanton, negligent or unnecessary damage, and must at all places keep its lines clear from those in actual use by plaintiff wherever it can be done without extra cost."

This principle is wholly inadmissible. How far the city, having agreed to the plaintiff's exercise of its franchises upon the streets, may, under its municipal powers and duties, or under the reservations of its ordinance of consent, subsequently invade or interfere with the franchises, is not now before us. But as between two corporations exercising similar franchises upon the same streets, priority carries superiority of right. Equity will adjust the conflicting interests as far as possible and control both so that each company may exercise its own franchises as fully as is compatible with the necessary exercise of the other's. But if interference and limitation of one or the other are unavoidable, the later must give way, and the fact that it is under contract with the city for work of a public nature, does not alter its position, or give it any claim to preference.

Moreover the standard of damages indicated by the court that the defendant in the construction and operation of its line must not do " any wanton, negligent or unnecessary damage," and must keep its lines clear from those of plaintiff, " wherever it can be done without extra cost," is altogether too broad. Equity

will enjoin not only wanton or negligent damage but all interference which is not strictly unavoidable, and in regard to keeping defendant's wires clear of those in bona fide use by the plaintiff and necessary for its business, the injunction must be absolute without regard to extra cost of other methods.

The further question raised by appellant, of the right of plaintiff to exclude defendants from the occupation of space necessary for plaintiff's business in the proximate future, is not sufficiently presented on the facts of the case, for determination at this time. The court has found that plaintiff has occupied unnecessary space with dead wires to exclude or embarrass defendant, but how far its requirements of space for future growth may be genuine, and how near in the future is not shown.

Decree reversed with directions to rehear and determine the case on the principles of this opinion.