## HUGHES v. CITY OF CUSHING et al.

No. 25892.   Dec. 18, 1934.

J. M. Grubbs, for plaintiff in error.

S. J. Berton, for defendants in error.

Brown Moore, amicus curiae.

RILEY, C. J.   This is an appeal from a judgment and decree denying an injunction in an action commenced by plaintiff in error to enjoin the city of Cushing, the board of city commissioners thereof, and the chairman and clerk of said board, from negotiating, hypothecating, selling, or delivering certain bonds of said city.

An ordinance was enacted by said city, approved January 4, 1934, known as ordinance No. 980, authorizing and directing a call for a special election to be held in said city on February 20, 1934, for the purpose of submitting to the qualified property taxpaying voters thereof a proposition to create an indebtedness and vote bonds of said city in the sum of $280,000 to provide funds for the purpose of constructing an electric power plant, electric distribution and transmission lines, and furnishing electric current to the city and the citizens thereof, said system to be owned exclusively by the city of Cushing.

The election was called and held, resulting in a vote in favor of said proposition, as shown by the returns of the county election board, by a vote of 152 more than one-half of all the votes cast at said election on said proposition.

Thereafter notice of sale of said bonds was published, calling for bids to be submitted on April 29, 1934.

Bid was submitted by the Federal Emergency Administration of Public Works in connection with a contract entered into between the city of Cushing and the United States by the Federal Emergency Administration of Public Works, dated March 21, 1934, providing for a grant of not to exceed 30 per centum of the cost of labor and material employed upon the project.   The bid was par, with accrued interest, for bonds to bear 4 per cent. interest.   The bid was accepted.   Action was commenced in the district court of Payne county, March 21, 1934, to enjoin the sale of the bonds.

The action appears to have been dismissed without prejudice on September 4, 1934. This action was commenced by plaintiff in error on September 5, 1934. Issues were joined at once and trial had, resulting in the judgment and decree presented here.

The proceedings going to the authorization, issuance, and sale of said bond issue, down to the acceptance of the bid above mentioned, are assailed upon many different grounds.

It is asserted in the petition that the proceedings are void for the reason that the city of Cushing at and during said proceedings did not have a legally constituted board of commissioners in that certain, or all, of its members were not qualified to hold such positions under the provisions of the city charter, in that section 4, art. 2, of the charter provided that each commissioner must be at least 25 years of age, a qualified elector of the city, not in litigation with the city, nor in arrears for city taxes when elected; not the owner of any stocks or bonds of any public service corporation doing business in the city, and must have been a bona fide resident and real property taxpayer of the city or territory legally annexed thereto, and, as to commissioners elected by wards of the city, each commissioner so elected must be at the time of his election an actual resident in good faith of the ward from which he is elected.

It is alleged as to some or all of the members of the board that they possessed none of the qualifications required, except possibly the requirement as to age.

It is well settled that the authority of a person to hold public office may not be challenged in an action of this kind. In Rogers v. Rogers, Trustee, et al., 102 Okla. 296, 229 P. 292, it is held the question of whether C. F. Rogers was properly holding the office to which he was elected as a member of the board of trustees of the town of Skiatook was not a question that the plaintiffs could raise in the action there under consideration. The action was one to test the validity of proceedings under the statutes authorizing the construction of public improvements such as paving streets, letting contracts therefor, etc. It was specifically held therein that such question could be raised only by the duly constituted authorities of the state in a proper proceeding instituted in the nature of quo warranto. This is generally recognized as the law in this state except where some individual is claiming the right to such office.

But in this case the trial court heard evidence on the question of the qualification of the several city commissioners to hold their respective offices, and held, under, the evidence submitted, that they were each qualified under the provisions of the city charter to hold such offices. It may be said that the uncontradicted evidence fully sustains the findings and judgment of the trial court on that question.

It was alleged in the petition that the ballots cast at said election were not properly counted by the election officers, and that had they been properly counted and proper returns made, the result of said election would have been different and instead of a majority vote in favor of the bonds, a majority was in fact cast against them. Plaintiff requested a recount of the ballots and defendant joined in the request. At the trial the ballots were recounted by the county election board under the order and supervision of the court. Plaintiff also alleged that a large number of persons who were legally qualified to vote at said election were refused the right, and had they been permitted to vote, the majority would have been against the bond issue. Evidence was taken on this issue showing that not to exceed 42 persons had been denied a vote, some on the ground that they were not taxpayers or did not have tax receipts. No showing was made as to how any one of such persons desired to vote on the question. But after the ballots were recounted it was agreed by the parties that the result of such recount showed 151 more than one-half of all votes were cast to be in favor of the bond issue. The court found that had all the 42 persons who were refused a vote been permitted to vote and had they all cast their votes against the bond issue, still there would have been a majority of all votes cast in favor of the bonds. The record shows that the majority in such case would have been about 130 in favor of the bonds.

The proclamation calling the election, the notice thereof, the ballot submitting the question, were all challenged as being void on the one ground of want of qualification of the members of the board. These questions are all settled under the first proposition mentioned.

It was also alleged in the petition that defendants or some of them paid taxes for certain persons in order to qualify them as voters with the understanding that such persons would vote for the bond issue, and that they did so vote. Evidence was taken

on this issue. There was no evidence whatever tending to sustain the allegation, and the trial court properly found for defendant on this question.

It was also alleged that the city officials improperly issued or gave instructions to the election officers as to the qualification of voters. The proof wholly failed to sustain this allegation and the trial court so found.

It was also alleged that legal voters were intimidated by defendants by threats of boycott, etc., to induce them to vote in favor of the bond issue. The evidence wholly failed to sustain this allegation, and the trial court found, and properly so, that there was no intimidation or coercion by defendants against any person or persons who might vote against the issuance of the bonds.

It was also alleged that divers and sundry persons were permitted to register and vote in said election who were not qualified as electors to vote at said election. There was no evidence whatever tending to support such allegation.

It was also alleged defendant city officers appointed and designated all election officers, and that they appointed or designated as such election officers only persons known to favor the bond issue. The uncontradicted evidence is that no inquiry was made by any of the city officers as to how any election officer stood on the question before his selection or appointment. There was no evidence tending to show any act on the part of any election officer tending to show that they permitted any person to vote who was not properly qualified.

It was also alleged that certain election officials were appointed or designated to assist in holding said election who did not live in the precinct where they served as election officials. There was no evidence to support this allegation.

The proceedings from the adoption of ordinance No. 980 to the acceptance of the bid of the United States through the F. E. R. A. were assailed as being irregular and insufficient in several particulars.

The entire proceedings, including proof of publication of all notices, were in evidence. It is not pointed out in the briefs wherein such proceedings, or any part thereof, are irregular, deficient or defective, in form or otherwise.

The trial court found them all regular, sufficient and in compliance with law.

We find no error in such finding.

It is alleged that the United States Government or some of its officers and representatives assisted in the preparation of the proceedings for said election and bond issue, and was interested as a prospective bidder in so doing.

The uncontradicted evidence refutes the allegation of assistance from the United States Government or its officers and agents in the preparation of said proceedings. The evidence is that the proceedings were directed by the city attorney of the city of Cushing and that he prepared all necessary papers in the proceedings without any aid or assistance from any prospective bidder, and particularly the United States Government, its officers or agents.

The court properly so found.

It is contended that the bid submitted by the United States Government and the proposed sale of said bonds thereunder are void for the reason "That the United States Government failed to deposit with the city clerk * * * two (2%) per cent. of the amount of the bonds advertised."

It is conceded that such deposit was not made. The trial court held as a matter of law that it was not necessary for the Federal Emergency Administration of Public Works to make such deposit, and that "the requirement is not jurisdictional."

Defendant relies principally upon this ruling for reversal, and cites the provisions of section 5930, O. S. 1931, the material part of which is:

"* * * Provided, that each bidder shall submit with his bid a sum in cash or its equivalent, equal to two per cent. of his bid and upon the acceptance of any bid, such deposit shall become the property of the county, or municipality selling said bonds, and shall be credited on the purchase price thereof, upon the understanding that if the purchaser shall fail for five days after tender of the bonds, to pay the balance of the purchase price, said sale shall be thereby annulled and said deposit shall in such event be retained by the governing body of such county or municipality and credited to the account for which such bonds are being issued and shall be used accordingly. Provided, that no tender of the bond shall be valid until after the expiration of the period of contestability, as now provided by law."

The contention is that the failure to make the deposit renders the bid invalid and that the city commissioners were without power to accept said bid and deliver the bonds thereunder.

This contention is without merit. The statute referred to does not by its terms render any bid made invalid or void when not accompanied by the 2 per cent. deposit.

It does provide that the bonds shall be sold to the bidder who will pay par and accrued interest, and shall stipulate in his bid the lowest rate of interest the bonds, when issued, shall bear, and that upon acceptance of such bid the bonds shall be issued in accordance therewith, and shall be delivered to the purchaser upon payment of the purchase price. Then follows the proviso above quoted.

All the authorities agree that provisions in the nature of that here under consideration are enacted for the benefit of the municipality, and not for the protection of other bidders or for the benefit or protection of the individual taxpayer.

In Junction City v. Central Nat. Bank (Kan.) 153 P. 28, it is said that the purpose of such requirement is well known. That it is in the nature of a pledge of good faith, and to guarantee a recoupment or partial recoupment for any contingent loss to the vendor if the contract is broken by the vendee.

In Cady v. City of San Bernardino, 153 Cal. 27, 94 P. 242, it is said that requirements of this nature are wholly for the benefit of the city to avoid possible loss in event the successful bidder refuses to enter into the contract, thus, perhaps, entailing the necessity of re-advertising.

In Crowe v. Boyle (Cal.) 195 P. 111, where a similar question was involved, though not in the sale of bonds, it is held that in proceedings invitum the failure to give the kind of bond required by the charter was insufficient to avoid the contract, and it was said that if such be the case, "it follows irresistibly that a taxpayer ought not to be allowed the extraordinary remedy of injunction to prevent the carrying out of a valid contract because of such informality where no showing whatever is made of actual injury to the taxpayer."

In general it may be said that the provision for a deposit with a bid in connection with the sale of bonds by a municipality is one made wholly for the benefit of the municipality and to protect it against possible loss on account of the failure of the bidder to comply with his bid if accepted, such as expense of re-advertising, etc. In other words, the purpose of such requirement is to protect the municipality against loss and expense on account of improvident, reckless, unscrupulous, or dishonest bidders, and may be waived.

It could hardly be said that the United States comes within such classes or any one of them. In this case there are no allegations and no proof that the city has sustained a loss or is likely to sustain a loss or incur any additional expense because the United States did not accompany its bid by the 2 per cent. deposit.

Certainly plaintiff has made no showing whatever that he has been or is likely to be injured. There is not the slightest intimation that the bidder, in this case the F. E. R. A., does not intend to or will not, or that it is unable to, comply with the terms of its bid and accept and pay for said bonds when tendered.

There is no just ground or occasion for an injunction because of failure of the bidder in this case to make the deposit.

After the petition in error and case-made was filed in this court one Clyde Hearn and the Interstate Power Company filed their joint motion and petition for leave to intervene in this court. They set up as grounds for leave to intervene that they filed an action in the district court of Payne county on March 21, 1934, wherein they sought to contest the validity of the same election; that they brought the action in good faith for and on behalf of themselves and other taxpayers similarly situated. That while said cause was pending their attorney and the city attorney of the city of Cushing attended a hearing before the Attorney General on a protest to a similar bond election, at which hearing their attorney heard or learned of "new or additional questions of law and of fact" which were not raised by them in their then pending action; that they dismissed their action without prejudice on the 4th day of September, 1934, and that the following day Jack Hughes commenced this action for the purpose of procuring a fraudulent judgment which would purport to adjudicate all questions in relation to the subject-matter involved.

They assert that the appeal of Jack Hughes is not taken in good faith and is not being conscientiously prosecuted. They allege that on October 4, 1934, nearly one month after the judgment was rendered in this case, and after the appeal was lodged in this court, they filed a petition to intervene in the district court of Payne county and motion to vacate the judgment there-

tofore rendered, attaching a copy thereof, together with other exhibits. They ask this court to suspend proceedings upon this appeal until the issues have been determined in their petition in intervention in the district court of Payne county, or that they be permitted to intervene herein and that this cause be referred to the referee and that they be permitted to take testimony in support of the allegations of their motion and for general relief.

We see no reason for suspending proceedings upon this appeal awaiting the determination of the motion to vacate the judgment in the district court. No reason is shown why they did not act promptly in the district court and file their motion before the case-made was made up in the case and the petition in error filed herein. We see no reason why their rights may not be fully protected in the proceedings which they say are pending in the district court.

We have carefully considered the petition or motion for leave to intervene herein. No authority whatever is shown for such proceeding. But if such procedure were authorized, there is no good cause for intervention pleaded.

In Vaughan et al. v. Latta, 168 Okla. 493, 33 P. (2d) 795, it is held:

"One who is not a party to a suit in the trial court, and whose rights are in no way affected by the judgment rendered, cannot be made a party after an appeal has been perfected to this court, the jurisdiction of this court in such cases being purely appellate."

Therein is quoted with approval from In re Waters of Chewaucan River, 89 Ore. 659, 171 P. 402, the following:

"The Supreme Court is a court of appellate jurisdiction only, and cannot admit interveners who were strangers to the proceeding below."

And from Youngberg v. Youngberg, 44 S. D. 1, 181 N. W. 835, the following:

"Intervention should not be allowed for the first time in the appellate court, under Rev. Code 1919, sec. 2322."

They do not point out in their motion on what questions of fact they desire to introduce evidence. They do not even allege that they are able to or that they believe they are able to produce any evidence whatever on any question of fact different from or in addition to that which was introduced by plaintiff at the trial in this case. They do not allege that plaintiff failed to produce evidence which was available to sustain any of the allegations of his petition, or that

they have such evidence which would in the least tend to produce a different result. They admit that plaintiff set up every question of law or fact that they raised in their petition in the case which they voluntarily dismissed without prejudice, and also every question that they desired to raise by their proposed amendment. They carefully avoid stating what new questions of law or fact they desired to raise by amendment to their petition, but they do admit that plaintiff herein did raise all the questions which they desired to raise.

In the absence of any showing that they have any evidence which would likely change the result, we can see no purpose that could be served by permitting them to intervene herein and take further evidence.

Certainly they ought to be required to set out that they have such evidence, and the nature thereof.

The motion to suspend and leave to intervene must therefore be, and same is hereby, denied.

Finding no substantial error in the proceedings before the trial court, and no proper cause for an injunction being shown so far as the proceedings for said bond issue had progressed at the time this action was commenced, the judgment of the trial court denying the injunction is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and BUSBY, JJ., concur. WELCH and BAYLESS, JJ., absent.