**INTERSTATE POWER CO. v. CITY OF CUSHING et al.**

**No. 1719.**

District Court, W. D. Oklahoma.
Oct. 12, 1935.

Brown Moore, of Stillwater, Okl., E. J. Lundy, of Tulsa, Okl., and Ames, Cochran, Ames & Monnet, of Oklahoma City, Okl., for plaintiff.

S. J. Berton, of Cushing, Okl., and Miley, Hoffman, Williams, France & Johnson, of Oklahoma City, Okl., for defendants.

VAUGHT, District Judge.

The plaintiff, a Delaware corporation, domesticated under the laws of Oklahoma, files its bill of complaint, amended and supplemental bill of complaint, and amendment thereto alleging that it has heretofore been engaged in furnishing, transmitting, distributing, and supplying electric light and power service to the city of Cushing, Payne county, Okl., under a franchise granted by said city, which franchise expired on the 23d day of December, 1932; that no renewal of said franchise has been granted by said city, but said plaintiff has expended for improvements and additions to its properties, since the expiration of said franchise, an amount in excess of $5,000, and it has continued, since the expiration of its franchise, to furnish light and power to the city of Cushing.

The plaintiff further alleges that, since the expiration of said franchise, said city has taken steps to install a municipal light and power plant to be owned by said city and that it applied to the Federal Emergency Administration of Public Works for aid in financing said municipal plant; that an election was held in said city for the purpose of voting bonds in the sum of $280,000 and said city purposes to and has entered into a contract of sale with said Federal Emergency Administration of Public Works for the sale of said bonds and that said Federal Emergency Administration agreed, as a part of its contract, to purchase said bonds, to grant to said city, as a gift, the sum of $70,000 to be used in the construction of said plant; that plans and specifications were approved and contracts let to defendants Charles M. Dunning Construction Company and Mattison-Wallock and Company, contractors, to erect and equip said plant and distributing system; that said contracts with the Federal Emergency Administration and with the contractors above named are violative of the laws of the state of Oklahoma and of the rights of the plaintiff as a public utility providing light and power to said city of Cushing, and as a taxpayer which would be obligated by taxation to participate in the payment of the bonds issued by said city, and the interest thereon.

The plaintiff furthermore alleges that if said city is permitted to consummate its contracts with the said Federal Emer-

gency Administration and to erect said plant, this plaintiff would be deprived of substantial rights under the Constitution of the United States and of the state of Oklahoma, and prays for a perpetual injunction permanently enjoining and restraining said city, the officers thereof, and said contractors from constructing and operating said competing municipal project, from issuing bonds, making contracts, and doing any other acts and things in furtherance of said project, and for a temporary injunction pending final hearing in this case.

The defendants have filed their joint and separate answers to the amended and supplemental bill of complaint, in which it is admitted that the plaintiff is a non-resident corporation and is alleged that the franchise of the plaintiff expired on the 23d day of December, 1932; that said plaintiff has since operated without any valid, legal right, without a franchise, and without any request or acquiescence of, or from the city officials or citizens thereof, either express or implied; that said plaintiff, prior thereto and on March 16, 1931, filed an initiative petition submitting the question of a proposed ordinance to the voters of Cushing, Okl., proposing the granting of a franchise to said plaintiff, and thereafter an election was held under said initiative petition on the 8th day of March, 1932, at which time 3,121 votes were cast, 1,925 of which were cast against said proposition and 1,189 were cast for the proposition, with 7 mutilated ballots.

The answers further allege that the city of Cushing passed an ordinance on the 24th of January, 1934, calling an election to be held in the said city of Cushing to vote on the proposition of issuing general obligation bonds in the sum of $280,-000 to provide funds for the purpose of constructing an electric power plant, electric distribution and transmission lines for furnishing electric current to the city of Cushing and the citizens of said city, to be owned exclusively by the city of Cushing; said election was duly and legally held and resulted in a vote of 490 in favor of the bonds and 183 against the bonds; that said city made application to the Federal Emergency Administration of Public Works for the sale of its bonds to the United States of America by and through the Federal Emergency Administration of Public Works, has sold and delivered $210,000 of said bonds to said Federal Administration, and that the city now has on deposit the proceeds from the sale of said bonds; that under the said contract there are $70,000 remaining of said bonds to be delivered to the United States government when funds are needed by said city; that, as a part of said agreement between the city and the Federal Emergency Administration to sell said bonds on behalf of the city and to purchase same on behalf of the Federal Emergency Administration, an additional sum of $70,000 was to be furnished by the United States government as a gift or grant to said city, based upon the assumption that 30 per cent. of the labor and material used in said construction would not exceed $70,000; the defendants have already delivered to the United States government $210,000 of the general obligation bonds, $105,000 of said bonds having been directly delivered to the United States government, and at the government's request and direction, $105,-000 of said bonds were delivered to the First National Bank of Cushing, the city of Cushing having received $210,000 and accrued interest for said bonds.

The defendants further allege that the city of Cushing has a legal, valid right to the gift or grant, and that no ratification by the voters of the city is needed to accept the gift or grant of $70,000 as proposed by said Federal Emergency Administration, or to accept any other free gift or grant to the city of Cushing, all as provided by the charter of said city.

The defendants furthermore deny that the voting of general bonds was in any wise illegal or that the actual facts or any data filed with the Federal Emergency Administration were misrepresented, and further allege and state that the plaintiff is now, and has been since December 23, 1932, without any right to operate a power and lighting system within the city of Cushing, and further deny that the city is estopped either in law or in equity under the Constitution of the state of Oklahoma, the general law or the charter of the city of Cushing, which was in effect at the time of the expiration of the franchise of the plaintiff, from proceeding with said construction work.

The defendants further allege that said bonds were legal and were submit-

ted to the Attorney General of the state of Oklahoma as provided by the laws of the state of Oklahoma, and that on the 7th day of March, 1935, the Attorney General of the state of Oklahoma validated and issued his written approval of said bonds; that in an action instituted in the District Court of Payne county, Okl., which was later appealed to the Supreme Court of Oklahoma, said bonds were held to be valid and legal in all particulars and that it was not necessary for the Federal Emergency Administration to deposit the 2 per cent. guaranty for the purchase of said bonds; that the said plaintiff filed a plea of intervention in said cause in the Supreme Court of the state of Oklahoma raising the same questions that are now raised in this action and that said questions are res judicata.

The defendants further allege that the Legislature of the state of Oklahoma passed the 1935 validating act approved April 27, 1935, which provided as follows:

"Section 3. *Bonds Validated.* All bonds heretofore issued for the purpose of financing or aiding in the financing of any work, undertaking or project by any public body to which any loan or grant has heretofore been made by the United States of America through the Federal Emergency Administrator of Public Works for the purpose of financing or aiding in the financing of such work, undertaking or project, including all proceedings for the authorization and issuance of such bonds, and the sale, execution and delivery thereof, are hereby validated, ratified, approved and confirmed, notwithstanding any lack of power (other than constitutional) of such public body, or the governing board or commission or officers thereof, to authorize and issue such bonds, or to sell, execute or deliver the same, and notwithstanding any defects or irregularities (other than constitutional) in such proceedings, or in such sale, execution or delivery; and such bonds are and shall be binding, legal, valid and enforceable obligations of such public body." Article 8, § 3, c. 32, 1935 Session Laws.

The emergency clause was attached to the act.

The answers further plead that, in the contract between the city of Cushing and the Federal Emergency Administration of Public Works, after setting out the various details of said construction contracts as to labor, material, etc., there was included the following: "This agreement shall be governed by and be construed in accordance with the laws of the State of Oklahoma."

The defendants, further answering, allege that their acts have been legal in all particulars and that the plaintiff's bill is without equity, and pray that the application for a restraining order and injunction be denied and the bill be dismissed.

On the question of jurisdiction, the plaintiff is not asserting a right, as a federal taxpayer, to enjoin the illegal expenditure of federal funds, but contends that, as a taxpayer in the city of Cushing, and the owner of the right to operate its business in said city, it has a right to enjoin the illegal acts of the city and its officials. The defendants contend, however, that even though the plaintiff has a right, as a taxpayer in the city of Cushing, all of the taxes which the plaintiff would be required to pay would be less than $3,000, the jurisdictional amount in this court, and that this court is therefore without jurisdiction.

The plaintiff's franchise has expired and it, therefore, cannot claim the impairment of a right because of an existing franchise. The allegations in the bill are that it has continued, since the expiration of its franchise, to furnish light and power to the city of Cushing with the knowledge, consent, and at the request of the city of Cushing, and has made extensive repairs to its plant and equipment with the knowledge and consent of the city of Cushing.

The defendants deny these allegations and assert that, while the plaintiff has continued to furnish light and power to the city of Cushing and the citizens thereof, it has done so without the request of said city but as a voluntary act and solely in its own interest.

As to whether or not the bond issue was legal, this court feels that it should not ignore the decision of the highest court of this state on this question. The validity of these bonds was considered by the Supreme Court and they were held valid. The Attorney General has approved the bonds. This bond election was held, according to the pleadings, with the definite understanding that the bonds would be sold to the federal government,

"cheap" money would be secured thereby, and the city would thus be enabled, by a bond issue of $280,000, to secure, in addition thereto, a gift or grant of $70,000 from the federal government.

The bonds have already been sold, the government has actually paid the city $105,000, and has directed the city to deliver to the First National Bank of Cushing an additional $105,000, and the city therefore has $210,000 in cash from the sale of $210,000 in bonds. The government is ready to pay for the additional $70,000 of bonds when the money is needed in the completion of the work, and the gift or grant of the $70,000 is also available.

This bond issue was also approved by the Legislature in what is known as the validating act, all of which is set forth in the pleadings and briefs.

The most serious question in this case, so far as this court is concerned, is whether or not Congress has power to levy taxes or to use its credit to create a fund from which to make loans to municipalities and states, but this court is relieved from further consideration of that question for the Tenth Circuit Court of Appeals, in Kansas Gas & Electric Co. v. City of Independence, Kansas, 79 F. (2d) 32, decided August 20, 1935, has held the act of Congress in question constitutional and the decision of that court is binding upon this court.

The only question, therefore, that remains is whether or not these various contracts, entered into between the city and the contractors in which certain alleged authority is granted by the city to the federal government relative to supervision of the construction work, the hours of employment, wages, material, type, and character of contracting, are such as to violate the provisions of the laws of the state of Oklahoma.

In Kansas Gas & Electric Co. v. City of Independence, Kansas, supra, the Tenth Circuit Court of Appeals held the Kansas Gas & Electric Company might challenge the validity of the bond issue and the diversion of the funds, for the reason that the electric company had a valid franchise from the city under which it was furnishing electric energy for light and power to the city and the inhabitants thereof, and such franchise constituted a contract and a property right. But no franchise exists in this case.

■ The plaintiff alleges that it has made extensive improvements with the knowledge and consent of the city, but the city, in its answer, denies that it has given its consent to any improvements by plaintiff in any manner, but if any such improvements have been made, they were made by plaintiff upon its own responsibility, with the full knowledge of its legal limitations.

The plaintiff, therefore, is in no position to ask the relief sought in this case by virtue of a vested right in the nature of a franchise.

The bonds having been declared legal by the Supreme Court of Oklahoma [Hughes v. City of Cushing et al., 170 Okl. 118, 39 P.(2d) 13] and validated by an act of the Oklahoma Legislature [article 8, § 3, c. 32, 1935 Okl. Session Laws], the constitutionality of the act of Congress having been upheld by the Tenth Circuit Court of Appeals [Kansas Gas & Electric Co. v. City of Independence, Kansas, 79 F.(2d) 32], the bonds having been sold to the federal government, and $210,000 of the $280,000 from said sale actually received by the city, the contracts having been let and construction thereunder begun, the city, or at least the contractors might sustain real injury by the issuance of an injunction.

■ The cases cited by the Tenth Circuit Court of Appeals, in support of the conclusion reached in its decision, Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483, City of Campbell v. Arkansas-Missouri Power Co. (C.C.A.) 55 F.(2d) 560, were also based upon the existence of valid franchises. In Arkansas-Missouri Power Co. v. City of Kennett, Mo., 78 F.(2d) 911, decided August 15, 1935, by the Eighth Circuit Court of Appeals, in which an injunction was granted, a valid franchise existed and it was because of the property right of the plaintiff in said franchise that the injunction was granted. It is true in the last-named case that the court held there was an unconstitutional delegation of power. In the case at bar, however, there is no franchise and the statute of Oklahoma is a very different statute from that existing in the state of Missouri.

The Constitution of Oklahoma, article 18, § 6, provides: "Every municipal corporation within this State shall have the

right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

In construing said provision of the Constitution, the Supreme Court in Moomaw et al. v. Sions, 96 Okl. 202, 220 P. 865, held: "A municipal corporation engaged in the operation of a system of electric lights exercises business and administrative functions, rather than those strictly governmental, and is governed largely by the same rules applicable to individuals or private corporations engaged in the same business."

In Los Angeles Gas & Electric Co. v. City of Los Angeles (D.C.) 241 F. 912, 913, it was held: "Whatever a city does in engaging in the furnishing and delivering of electrical energy to itself and its inhabitants is done in its proprietary or quasi private capacity."

The law in Oklahoma, as declared by its highest court, is that a city may engage in a strictly business enterprise without being placed in the position of exercising a governmental function.

Under the pleadings in this case, it is evident that at the time these bonds were voted by the city of Cushing the proposition submitted to the people was that the bonds would be sold to the government and the government would make a substantial donation, gift, or grant to the city, not only to assist the city in the construction of a light and power plant, but to provide employment for the unemployed. The same question was involved in the case carried to the Supreme Court of Oklahoma in a suit to determine the validity of the bonds, which called for a consideration of the provisions in the construction contracts of the very terms and conditions of which the plaintiff complains. The Supreme Court held that the bonds were valid though issued with the conditions and limitations under which the federal government, through its PWA agency, purchases the bonds and makes grants to municipalities. All of these conditions and limitations complained of by the plaintiff were evidently before the Legislature and with these facts clearly before the people and the Legislature, the bond issue was validated and there is the clear implication that those things necessary to be done

to apply the proceeds from the sale of the bonds to the construction of the municipal plant were considered by the legislative body.

■ The validity of the PWA contract was litigated in the case carried to the Supreme Court of Oklahoma. The contract between the city and the government contained the only limitations or provisions complained of by the plaintiff, incorporated in the contracts between the city and the construction contractors. It may be assumed that the construction contracts do contain some provisions which are contrary to state law.

These same provisions are contained in the contract between the city of Cushing and the United States government. The latter contract contains the following provisions: "This agreement shall be governed by and be construed in accordance with the laws of the State of Oklahoma." Any provisions of the construction contracts, therefore, which are in conflict with the laws of Oklahoma, are void and of no effect and the city of Cushing and the construction contractors are under no legal obligation to respect such void provisions.

■ The court, therefore, is faced with the situation that the act of Congress has been held constitutional in this jurisdiction; that the bond issue and the contract between the city of Cushing and the federal government have been upheld by the Supreme Court of Oklahoma; that the bond issue, furthermore, has been validated by the Legislature of Oklahoma; and that the contracts between the city and the defendant construction companies contain nothing that has not been approved by the Supreme Court of the state and by the Legislature of the state.

In considering plaintiff's application for injunctive relief, the situation just referred to cannot be ignored, and in passing upon that point, it is apparent that many allegations of the bill and answers are conflicting, and the facts can be determined only by a trial of the issues.

The motions to dismiss will be overruled, and the application for temporary injunction denied. Exceptions are allowed. A form of decree, consistent with the foregoing opinion, may be submitted.